ARTHUR S. KLEEMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68841. Promulgated November 3, 1936.

*Frank R. Pentlarge, Esq.*, and *David C. Johnson, Esq.*, for the petitioner.

*Philip M. Clark, Esq.*, and *Stanley B. Pierson, Esq.*, for the respondent.

18

MURDOCK: The Commissioner determined a deficiency of $33,351.28 in the petitioner's income tax for the year 1929. He now claims a greatly increased deficiency on the ground that he erred in two respects in his original determination.

The Board is asked to decide the following issues which were raised by the petitioner's assignments of error:

1. Whether the Commissioner erred in failing to allow a partnership known as Arthur S. Kleeman & Co. to inventory, as of the close of the year, the preferred stock of the Home & Foreign Securities Corporation, and in failing to allow the petitioner a deduction of $21,148.30 representing his distributive share of the loss to the partnership resulting from inventorying the stock at market;

2. Whether the Commissioner erred in including in the income of the petitioner $2,500 representing certain organization expenses of the Home & Foreign Securities Corporation paid by the partnership and subtracted by the partnership in computing its commissions from selling the stock of the Home & Foreign Securities Corporation;

3. Whether the Commissioner erred in including in the income of the petitioner a profit from the sale of 25,835 shares of the common stock of the Home & Foreign Securities Corporation made by the partnership as short sales, not all of which were completed by a covering purchase within the taxable year; and

4. Whether the partnership sustained a deductible loss from the short sale of 7,256 shares of common stock involved in issue 3, and the purchase during the year of a like number of shares to cover those particular short sales.

The Commissioner makes two affirmative contentions in support of his claim for an increased deficiency. One, that he erred in failing to include in the petitioner's income $765,607.47, representing the profit which the petitioner and his wife realized upon the liquidation of the Republic Holding Corporation in 1929. The other that he erred in allowing the petitioner and his wife to deduct a loss of $314,392.53 upon the alleged sale of 75,000 shares of common stock of the Home & Foreign Securities Corporation in the year 1929.

Most of the facts have been stipulated and for that reason they need not be set forth in full here.

The petitioner is an individual. He was married and living with his wife, Alice P. Kleeman, during all of the year 1929. He filed a joint return for himself and his wife on March 15, 1930, with the collector of internal revenue at Albany, New York.

The petitioner and three other individuals formed a partnership on April 1, 1929, known as Arthur S. Kleeman & Co., for the pur-

pose of carrying on an investment and securities business. The Commissioner, in determining the deficiency, disregarded this partnership.

One of the first pieces of business which the partnership undertook was to organize and sell the stock of the Home & Foreign Securities Corporation (hereafter called Home & Foreign). Home & Foreign was organized on June 7, 1929, under the laws of Maryland. An agreement was entered into on June 20, 1929, whereby one share of its preferred stock, one share of its common stock, and a warrant to purchase an additional share of its common stock, under stated circumstances, was to comprise an indivisible unit to be represented by an allotment certificate. The agreement further provided that 75,000 of these units were to be sold by the partnership on commission for Home & Foreign. The partnership, as a result of this agreement, felt called upon to deal in the units on its own account in order to maintain a market for the securities which it was selling. The units were to be divisible and subject to sale separately not later than January 1, 1930. Home & Foreign, as it had a right to do, divided the units on December 1, 1929. The allotment certificates which the partnership owned and held for sale as a dealer at the time of the division of the units were surrendered and in their place the partnership received preferred shares, common shares, and warrants, which it could sell separately and held for sale as a dealer in those securities. However, during December 1929 there was no demand for these securities and the partnership was unable to dispose of any of the preferred stock after the division. It inventoried 1,099 shares of preferred stock of Home & Foreign which it held on December 31, 1929, at $25 a share and claimed on its return a deduction of $21,859.60, representing the difference between the cost of the shares and their fair market value as inventoried. The Commissioner in determining the deficiency held that the partnership was not a dealer in the preferred stock and denied the deduction. The fair market value of the preferred stock of Home & Foreign on December 31, 1929, was $25 per share.

The agreement of June 20, 1929, relating to the sale by the partnership on commission of the units of Home & Foreign securities, provided that each unit should be sold by the partnership at $60; $56.66⅔ for each unit sold was to be paid to Home & Foreign; and the difference of $3.33⅓ was to be retained by the partnership "to cover the expenses and our charges in connection with the sale, it being further understood that we will assume and pay the expenses incident to your incorporation including taxes; legal fees; all taxes incident to the original issue of the 150,000 shares of Common Stock and the 75,000 shares of Preferred Stock above referred to; the initial fee of the Transfer Agent and Registrar for the stock to be issued and

like fee of the Depositary and Trustee incident to the issue of the proposed allotment Certificates and Warrants; the expenses of printing, engraving and advertising and other miscellaneous expenses in connection with the issuance of the stock, incorporation of your company, the Warrants and Allotment of Certificates aforesaid * * *." The partnership, pursuant to this contract, sold during 1929 a substantial number of the units prior to the time they were subdivided on December 1, 1929. The partnership paid $2,799 on or about July 7, 1929, pursuant to the contract above referred to, for organization expenses of Home & Foreign, including a bonus tax to the State of Maryland in the amount of $2,200, an annual registration fee of $100, and various filing fees and expenses incident to the organization of Home & Foreign. The $2,799 thus paid was subtracted in computing the commissions of the partnership from the sale of units. The partnership reported a loss from its operations for the year 1929. The petitioner claimed all of the loss of the partnership on his return. The Commissioner, in determining the deficiency, added to the petitioner's income $2,500 representing organization expenses of Home & Foreign paid by the partnership.

The partnership, during 1929, also bought and sold common stock of Home & Foreign on its own account. It sold during that year 25,835 shares of the common stock of Home & Foreign in this account for $410,305.50 and purchased during the year 7,256 shares for $121,073.30. It received $99,925 for the first 7,256 shares sold. The partnership made deliveries of common stock thus sold from stock borrowed from Alice P. Kleeman and kept regular records of the stock borrowed and returned. It owed to Alice P. Kleeman, or her assignee, at the end of the year 1929, 18,579 shares. The partnership accounted for its sales of common stock in this account as short sales. It did not realize any profit during 1929 from the sale of the 25,835 shares. It sustained a loss of $21,148.30 from the short sale of 7,256 shares and the covering purchases made during 1929. The Commissioner, in determining the deficiency, included in the petitioner's income, as profit from the sale of Home & Foreign common stock, $220,233.51.

The petitioner and his wife were the owners of some stock of the Manufacturers Trust Co. and of the Long Island Lighting Co. which they desired to have Home & Foreign own. They desired, at the same time, to avoid a tax to themselves on the disposition of these shares and to avoid giving Home & Foreign a low basis for the securities which it was to acquire. They organized the Republic Holding Corporation (hereafter referred to as Republic) on July 1, 1929, for the purpose of accomplishing these results. The petitioner then transferred 1,544 shares of Manufacturers Trust Co.

stock to Republic in exchange for 54 Republic shares, and his wife transferred 560 shares of Manufacturers Trust Co. stock and 2,800 shares of Long Island Lighting Co. stock to Republic in exchange for 46 of its shares. Republic had no other shares. An agreement was then entered into on July 2, 1929, between Republic, Home & Foreign, the petitioner, and his wife whereby Republic agreed to transfer all of its assets, consisting of 2,104 shares of Manufacturers Trust Co. stock and 2,800 shares of Long Island Lighting Co. stock, to Home & Foreign in exchange for securities of the latter consisting of 75,000 shares of its common stock and warrants to purchase a like number of shares of its common stock. The agreement further provided that the Home & Foreign stock, together with the warrants which Republic was to receive, was to be distributed by Republic to its stockholders in proportion to their stockholdings. This agreement was carried out and the petitioner received 40,500 shares of Home & Foreign stock and a similar number of warrants. His wife received 34,500 shares and a similar number of warrants. The shares thus received by the petitioner and his wife were less than 80 percent of the voting stock and less than 80 percent of the total number of shares of all other classes of stock of Home & Foreign then outstanding. Republic, after making the above described distribution, had no further business transactions whatsoever. The cost to the petitioner of the 1,544 shares of Manufacturers Trust Co. stock above referred to was $150,411.05. The cost to his wife, Alice P. Kleeman, of the 560 shares of Manufacturers Trust Co. stock and the 2,800 shares of Long Island Lighting Co. stock above referred to was $171,481.48. The fair market value of the 40,500 Home & Foreign common shares and warrants at the time they were received by the petitioner in the above transaction was $405,000. The fair market value of the 34,500 Home & Foreign shares and warrants at the time received by the petitioner's wife in the above transaction was $345,000.

The petitioner and his wife in December 1929 owned 75,000 shares of the common stock of Home & Foreign, and a like number of warrants, which they had acquired under circumstances set forth above. The value of these shares was then much less than it had been at the time they were originally received by these two parties. The petitioner desired to realize a loss on these shares for income tax purposes. To accomplish this purpose he organized the Pentson Corporation (hereafter called Pentson) on December 23, 1929. The capital stock of this corporation consisted of 100 shares which were subscribed and paid for at $80 per share in cash, the petitioner taking 41 shares, his wife 34 shares, and Frank R. Pentlarge and David C. Johnson, as joint tenants, taking 25 shares. Pentlarge and Johnson

were attorneys for the petitioner. They actually paid for their stock with their own cash and still owned the 25 shares which they acquired. Pentson, on or about December 26, 1929, purchased 40,500 shares of Home & Foreign common stock and a like number of warrants from the petitioner, and 34,500 shares and warrants from his wife at 10 cents a share, for a total consideration of $7,500. Pentson never acquired any other property nor did any other business.

The Commissioner in determining the deficiency held that there was no partnership and that Arthur S. Kleeman & Co. was, for income tax purposes, the same as the petitioner. The petitioner urges the Board to hold that there was a partnership, while the respondent argues strenuously that there was no partnership. The decision of that question may be unimportant in reaching a decision on the real issues in the case. Still, since it is clear that there was a partnership, we have no hesitation in saying so. The partnership claimed an inventory loss on 1,099 shares of preferred stock of Home & Foreign. The Commissioner conceded that the partnership was a dealer in the units of Home & Foreign, but he denied the right of the partnership to inventory the preferred shares because, he said, it was not a dealer in those shares. Each unit was divided into its component parts on December 1, 1929. The partnership was a dealer in the units prior to that division and, thereafter, was still a dealer in the component parts, even though it was unable to make sales due, at least in part, to the crash in the market which had just taken place. The partnership was entitled to inventory the preferred shares which it owned on December 31, 1929. The only argument which the Commissioner presents in his brief on this issue is that $25 was not the fair market value of the shares on December 31, 1929. The evidence shows that the figure at which the preferred shares were inventoried by the partnership was a proper one for the purpose.

The Commissioner added to the petitioner's income $2,500 representing organization expenses of Home & Foreign paid by the partnership. A corporation has no right to deduct its own organization expenses, but that is not the question now before the Board. The partnership agreed to pay these organization expenses of the corporation. The gain which the partnership made from selling the units can not be computed without giving due effect to the fact that it was required to pay and actually paid the $2,500. The commission or compensation which it was to receive for selling the units was not $3.33⅓ per unit sold, but the difference between $3.33⅓ multiplied by the number of units sold and the expenditures, including the $2,500 in question, which it made in accordance with its contract. It is not necessary to hold that these organization expenses were ordinary and necessary expenses of the partnership, since the result is the same if

the $2,500 be subtracted in computing the commissions of the partnership. Why the Commissioner made a distinction between the $299 which he allowed and the $2,500 which he disallowed, does not appear. The partnership correctly computed its commissions from the sale of the units in its return for 1929, and the Commissioner erred in adding $2,500 to the petitioner's income on account of the organization expenses of the corporation.

The next question is whether the partnership made short sales of 25,835 shares of common stock of Home & Foreign, or whether the sales of those shares were ordinary sales from which the partnership realized gain or loss in 1929. The partnership had received from the petitioner 31,000 shares of Home & Foreign common stock from which it could have made deliveries of the 25,835 shares sold. But, as a matter of fact, it did not make deliveries from the shares thus obtained from the petitioner. Instead, it made deliveries from shares borrowed from the petitioner's wife. The wife was a separate taxpayer from the petitioner and she was not a member of the partnership. The fact that she and her husband filed a joint return for 1929 is immaterial. *Frank B. Gummey*, 26 B. T. A. 894. The partnership intended the sales as short sales. It made covering purchases only in the amount of 7,256 shares. Covering purchases for the remaining 18,579 shares were not made during 1929. Consequently, no gain or loss can be computed for 1929 on those sales. *Robert W. Bingham*, 27 B. T. A. 186; *Frances Bartow Farr et al., Executors*, 33 B. T. A. 557. The petitioner seeks to have the 7,256 shares purchased matched against and used to cover the first 7,256 shares sold. The respondent has apparently used the cost of the 7,256 shares as part of the basis for computing gain or loss. In any case he has failed to suggest any good reason why they should not be matched as the petitioner suggests. Cf. *Robert W. Bingham, supra*. A loss of $21,148.30 results and should be included in computing the petitioner's distributive share of the gain or loss of the partnership for 1929.

The first affirmative contention made by the Commissioner is that the gain realized by the petitioner and his wife from the receipt of the 75,000 shares of common stock of Home & Foreign and the corresponding number of warrants is recognized for income tax purposes since they received this property in a distribution which was a complete liquidation of Republic but was not a statutory reorganization. It is apparent, since Home & Foreign acquired all of the properties of Republic, that the transaction is within the terms of subdivision (A) of section 112 (i) (1) of the Revenue Act of 1928. It is not so clear that the transaction is within the terms of section 112 (g).

Cf. *James M. Harrison*, 30 B. T. A. 966. The Commissioner relies upon the case of *Gregory* v. *Helvering*, 293 U. S. 465, in support of his contention that there was no statutory reorganization. Taxpayer Gregory owned all of the stock of the United Mortgage Corporation. That corporation held among its assets 1,000 shares of the Monitors Security Corporation. For the sole purpose of procuring a transfer of these shares to herself, in order to sell them for her individual profit, and, at the same time diminish the amount of income tax which would result from a direct transfer by way of dividend, she sought to bring about a "reorganization." She caused the Averill Corporation to be organized. United then transferred to Averill the 1,000 shares of Monitors stock, for which all of the shares of Averill were issued to taxpayer Gregory. Averill was then dissolved and liquidated by distributing all of its assets, the Monitors shares, to taxpayer Gregory. No other business was ever transacted or intended to be transacted by Averill. The Monitors shares were then sold. The Supreme Court held that the statute, in defining a reorganization, did not mean a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either and that the transactions in the *Gregory* case involving Averill had no business or corporate purpose and were not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the petitioner. The present case is not distinguishable in principle. Kleeman and his wife had property which they wanted Home & Foreign to have. A direct transfer would have subjected the Kleemans to income tax. To avoid that but to accomplish no business purpose of either corporation, they organized Republic. They transferred their property to Republic in exchange for its shares and had Republic transfer the property to Home & Foreign in exchange for some of its shares which were immediately distributed to the Kleemans by Republic in complete liquidation of Republic. No other business was ever transacted or intended to be transacted by Republic. There was not a transfer of assets by one corporation to another in pursuance of a plan of reorganization of either corporation, but was a transfer in pursuance of a plan having no relation to the business of either. There was no plan to reorganize a business or any part of a business. The plan was simply to transfer some property to Home & Foreign. The *Gregory* case is controlling. Although the undertaking was conducted according to the terms of subdivision (A), it was not a reorganization within the meaning of that definition. Republic was a new and valid corporation. The 75,000 shares of stock and warrants of Home & Foreign were received by Kleeman and his wife in complete liquidation of Republic. Amounts distributed in complete liquidation of a cor-

poration must be treated as in full payment in exchange for the stock of that corporation. Sec. 115 (c). The cost to the Kleemans of the Republic stock is the same as their basis for gain or loss upon the property which they transferred to Republic. Sec. 112 (b) (5); sec. 113 (a) (6); sec. 111. That basis has been stipulated. Their gain, therefore, is the difference between that basis and the fair market value of the shares and warrants of Home & Foreign at the date of the distribution, July 2, 1929. That value has been found as a fact above.

The Commissioner makes the affirmative contention that he erred in allowing the petitioner and his wife to deduct a loss of $314,392.53 on the alleged sale by them of 75,000 shares of common stock and a like number of warrants of Home & Foreign to Pentson in December 1929. He points to the fact that the sale was made at 10 cents for each share and warrant, or for a total consideration of $7,500, whereas the last previous sale of this stock shown in the record is the sale of 150 shares for $12 per share on October 11, 1929. However, a great crash in the market took place, as is well known, in the latter part of October 1929, and, furthermore, the evidence shows that the assets of Home & Foreign in December were insufficient to give any real book value to the common stock. The evidence, therefore, does not indicate that this sale was not made at a fair market price. The Commissioner also draws attention to the fact that Pentson was organized for the purpose of reducing income taxes, Pentlarge was a cousin of Mrs. Kleeman, Pentlarge and Johnson were attorneys for the petitioner and the various corporations involved in this proceeding, the petitioner and his wife had control of Pentson, and Pentson never conducted any business other than the purchase of this stock. The Commissioner argues that the sale was not a bona fide sale at arm's length. The evidence, however, indicates the contrary. Pentson is still in existence and, apparently, still owns the stock. The interest of Pentlarge and Johnson was a different interest from that of the petitioner and his wife. There was no agreement or understanding between the parties as to a reacquisition by the Kleemans of the property sold or of the interest of Pentlarge and Johnson in Pentson. Thus there is not only no reason to deny the petitioner and his wife the loss which they realized on the sale of Pentson, but there is sufficient reason to allow them that loss. Furthermore, as a result of the decision on the previous issue, their basis for gain or loss upon the Home & Foreign shares and warrants is now for the first time established at $750,000. They are entitled to the use of that basis in the computation of their loss.

*Decision will be entered under Rule 50.*