## ELECTRICAL SECURITIES CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.
### No. 9.
Circuit Court of Appeals, Second Circuit.

Nov. 8, 1937.

594

Simpson, Thacher & Bartlett, of New York City (Graham Sumner and Courtland Kelsey, both of New York City, of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., Charles A. Horsky, of Washington, D. C., Stephen M. Farrand, of Los Angeles, Cal., and Helen R. Carloss, of New York City, for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The question at issue is whether the taxpayer made a taxable gain in the year 1930 because of the transactions which we shall describe. Its business was to hold the securities of public utility companies, and it had acquired a number of shares of stock in the United Gas Improvement Com-pany which on May 1, 1930, the United Corporation, another company whose business was also to hold the securities of utility companies, offered to take over for its own shares, share for share. This offer was open until May 12, 1930, at 3 P. M., and the petitioner and four others, similarly situated, decided to accept it; to do so they devised and carried out the following plan. On May 10, they organized a new company, called the Diselin Corporation, to which on May 12th they transferred their United Gas Improvement shares, and took all the Diselin shares in exchange. On the same day the Diselin Corporation transferred to the United Corporation the shares of the United Gas Improvement Company it had just received—its only property;—and at the request of the Diselin Corporation the United Corporation transferred an equal number of its own shares direct to the petitioner and the four others, and they received them in exchange for their Diselin shares, which they surrendered to the Diselin Corporation for cancellation. That company was formally dissolved on June 26, 1930, without ever doing anything more. It is admitted that it was organized and used as we have described, solely for the purpose of suspending the tax which would have been imposed if the United Gas Improvement shares had been transferred direct to the United Corporation. The petitioner's argument—unsuccessful before the Board—is that the transfer from the petitioner to the Diselin Corporation was exempt under section 112 (b) (5), Revenue Act of 1928, 26 U.S.C.A. § 112 (b) (5) and note because the transferrors—the petitioners and its fellows—were "immediately after the exchange * * * in control of the corporation." The transfer of the Diselin shares for the United Corporation shares was likewise exempt under section 112 (b) (3), 26 U.S.C. A. § 112 (b) (3) and note, because both companies were "parties to the reorganization," under section 112 (i) (1) (A), 26 U. S.C.A. § 112 (g) (1) (A) note, and the Diselin shares were exchanged solely for the United Corporation shares. We may assume arguendo that this argument is sound as to both steps, and that the tax should have been suspended, if the Diselin Corporation was within the meaning of section 112 at all.

Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, involved a somewhat similar ritualistic in-

cantation which was there held to be a sham. We do not understand that by this was meant that the property did not pass into, and out of, the Averill Corporation, the new company there organized, precisely as in any other case. The transactions were not a sham in the sense that a contract made in jest is a sham, creating no obligations whatever. Here as well we do not doubt that the United Gas Improvement shares actually passed to and out of the Diselin Corporation, a lawfully created corporate person, capable like any other such, of receiving, holding and transferring any kind of property. But that company, however unassailable its existence and its powers, must have been one which Congress meant to exempt by section 112 (26 U.S.C.A. § 112 and note), and it does not in the least follow that it was, because it was a regularly constituted juristic person. The purpose of the section is apparent; it was meant to allow businesses to be reconstructed when the resulting interests were substantially unchanged; but it presupposed that the enterprises were in fact businesses; financial, commercial, industrial and the like. The avoidance or suspension of taxes is not a business. While this may introduce into the definition an element of purpose, it does not trench upon the doctrine that men may arrange their affairs with an eye to reducing or avoiding taxes; so they may, but they must conform to the terms of the statute and to understand these we need more than a dictionary. The distinction is well illustrated by Helvering v. Minnesota Tea Co., 296 U.S. 378, 380, 56 S.Ct. 269, 80 L. Ed. 284, although the case is not in fact an authority on the question at all, because the court specifically reserved decision as to the first transfer. The taxpayer, in order to bring itself within an exemption, as a first step sold part of its assets to another company. Having so partially stripped itself, it sold what was left to another company, and succeeded in securing exemption because the second sale was then of *all* its assets. The first buyer was however intended to hold the assets which it got, and apparently continued to hold, and use, them for its own corporate purposes; if so, it was a business corporation, and the purposes of the particular transaction did not matter. Again in Ballwood Co. v. Commissioner, 84 F.(2d) 733 (C.C.A.3), the transfer by the petitioner of its pipe making assets to the new corporation was exempt, if the new company was organized to do any other business than to suspend the tax. Apparently it was to do more; at least it continued to hold the pipe making assets. We need not say whether that was necessarily final; conceivably, for instance, the pipe making business might have been so directly managed by the Midwest Company that only a dry trust was left; perhaps that would not suffice; the Treasury cannot be fobbed off with words, however ingeniously contrived. But there is nothing in the report to indicate that the new company did not truly conduct the pipe business which had been transferred to it, and we cannot see that the decision is contrary to what the Board held here. It is not necessary to consider its own later decision, Independent Oil Co. v. Commissioner, 35 B.T.A. 32.

In the case at bar there cannot be the slightest doubt that the Diselin Corporation was not a business corporation if tax avoidance or suspension is not a business; it had no other reason to exist, and it did nothing but act as a momentary conduit for the United Gas Improvement shares. We need not say whether the petitioner and the four others were taxable when they exchanged their original shares for Diselin shares, or when they exchanged their Diselin shares for United Corporation shares. If no taxable gain resulted when the petitioner got Diselin shares, it was not because of section 112 (b) (5), 26 U.S.C.A. § 112 (b) (5) and note, but because there had been no substantial change in the property. We do not suggest that there had not been; but if there had not, then when they exchanged Diselin shares for United Corporation shares, the "basis" was the cost of the Diselin shares, which was the same as the cost of the United Gas Improvement shares. The petitioner may choose either horn it pleases.

Order affirmed.