## LEA v. COMMISSIONER OF INTERNAL REVENUE.

### No. 123.

Circuit Court of Appeals, Second Circuit.

April 4, 1938.

White & Case, of New York City (Walter S. Orr and Francis L. Casey, both of New York City, of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and J. Louis Monarch and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The petitioner is a daughter of Elmer A. Sperry, Sr., who died June 16, 1930. On April 14, 1910, he organized the Sperry Gyroscope Company (its name was subsequently changed to Sperry Research Corporation · January 17, 1929), and it was engaged prior to January 21, 1929, in the manufacture and sale of gyroscopes, gyroscopic compasses, searchlights, and other apparatus for naval and aircraft equipment. The Sperry Development Company was organized December 27, 1922, and engaged in carrying on experimental work in connection with Sperry Sr.'s patents. After 1926, the Development Company stock was held by Sperry, Sr., his wife and three children.

In December, 1928, negotiations for the sale of the Research Company to North American Airation, Inc., were entered into; but, during the negotiations, it developed that certain patents under which the Research Company was manufacturing searchlights, gyroscopes, and other products were not owned by it but were owned by the · Development Company. North American, the purchaser, then desired all the patents under which Research Company operated assembled in one corporation and for that purpose suggested the formation of the Searchlight Patent Corporation, which was organized December 28, 1928, with an authorized capital of 10,000 shares without par value. On January 18, 1929, the Development Company transferred the patents to Patent Corporation and in exchange, pursuant to agreement, Patent Corporation issued its full 10,000 shares of stock pro rata to the stockholders of the Development Company without surrender by them of any of their Development Company stock. The same five Development Company stockholders then owned the 10,000 Patent Corporation shares.

Thereafter negotiations for the consummation of the sale of Research and Patent Corporations to North American continued, and it was then discovered by the purchaser that if it acquired the stock of the Patent Corporation, depreciation of the patents owned by the Patent Corporation would be limited to a basis of $108,-000, the cost of the patents to the transferor [see sections 113(a) (7) and 114(a), Revenue Act 1928, 26 U.S.C.A. §§ 113 note, 114 note], rather than the price it would pay for the stock, which was $1,-000,000. Moreover, subsequent to the acquisition by Patent Corporation of the patents, it developed that Sperry, Sr., as principal patentee and inventor, might have retained some rights in the patents. The purchaser therefore requested the dissolution of the Patent Corporation, and the assignment of the patents directly from Sperry, Sr. This was done only at

the instigation of the purchaser and to comply with its request. In accomplishing this purpose, and to avoid the difficulty of dividing the patents among the five stockholders on dissolution, a day or two after January 18, 1929, Sperry Sr.'s wife and three children sold their Patent Corporation stock to Sperry, Sr., for his notes aggregating $710,000. One of these notes for $150,000 was delivered to the petitioner for her Patent Corporation stock. Sperry, Sr., then the sole stockholder, on January 21, 1929, caused the corporation to be dissolved and its assets, the patents, were distributed to him the same day. The purchaser had organized a new subsidiary corporation and acquired all its stock for $4,000,000 in cash. Sperry, Sr., then sold these patents on the same day, January 21, 1929, to the new subsidiary corporation of North American for $1,000,000 in cash. A week later, with the cash thus acquired, Sperry, Sr., paid off the notes including that of the petitioner.

Upon the transfer of the patents by the Development Company, it had undistributed. earnings and profits of $51,015.28 available for dividends. Unless it may be said that the Development Company realized earnings or profits by the transfer of the patents and patent rights, this was the total of its undistributed earnings.

The petitioner reported, in her income tax return, as a capital gain and profit, the sale of her Patent Corporation stock to Sperry, Sr., and the latter reported as a capital gain his share of the profits from the receipt of $1,000,000 worth of patents in complete liquidation of the Patent Corporation. The Board held that the organization and dissolution of the Patent Corporation should be disregarded and that the distribution of patents be taxed as an ordinary dividend.

The uncontradicted testimony establishes that it was not until January 18, 1928, after the Patent Corporation was organized and had acquired the patents and its stock had been issued to the stockholders of the Development Company, that the purchaser abandoned the plan to acquire stock of the Patent Corporation and suggested that the corporation be dissolved and requested assignment of the patents from Sperry, Sr. Thus it was the purchaser, not the seller, who suggested the change. Nothing in the record suggests that North American had any interest in the tax problems of the Sperry family.

Thus the incorporation and dissolution of the Patent Corporation was brought about by the purchaser who had no interest in the reorganization provisions.

Though the life of the Patent Corporation was short, it was nevertheless properly organized for a business purpose and was intended to operate as a holding company for the patents until the purchaser requested the changes above described. It was only after the organization of the Patent Corporation and the transfer of the patents and issuance of its stock that it developed that the purchaser would be unable to depreciate the patents other than on the basis of cost of these patents in the hands of the transferor ($108,000), although they were in effect costing the purchaser $1,000,000. This was the reason that led to the suggested change, and the further reason that Sperry, Sr., might have some interest in the patents, which would make it advisable for him to assign them to North American. It was only after these considerations were advanced by North American that Sperry's wife and children agreed to sell their stock in Patent Corporation to Sperry, Sr.

It was. the purchaser who suggested that all the patents used in connection with the gyroscope business be transferred to a single corporation which was to act as a patent holding company in connection with the business to be carried on by the purchaser. The Board found that in the exchange for this part of the assets of the Development Company, the petitioner, her mother, father, and brothers, received pro rata all the capital stock of the Patent Corporation without surrendering any of their Development Company stock.

The transaction itself was in conformity with section 112(i) (1) (B) and section 112(g) of the Revenue Act of 1928, 45 Stat. 816, 818, 26 U.S.C.A. § 112 note.

§ 112(i). "Definition of reorganization. As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means * * * (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the. assets are transferred."

§ 112(g). "Distribution of Stock on Reorganization. If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party

to the organization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized."

The Board in its decision relied on Gregory v. Helvering, 293 U.S: 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, and Electrical Securities Corporation v. Com'r, 2 Cir., 92 F.2d 593 and accordingly found that the stock distribution was not in pursuance to a plan of reorganization so as to make it nontaxable within subdivision (g) of section 112. In Chisholm v. Com'r, 2 Cir., 79 F.2d 14, at page 15, 101 A.L.R. 200, this court said: "True, it is always the intent that controls. * * * We may assume that purpose may be the touchstone, but the purpose which counts is one which defeats or contradicts the apparent transaction, not the purpose to escape taxation which the apparent, but not the whole, transaction would realize." If an intention to dissolve within three days existed when the patents were assigned to Patent Corporation, there would be a basis for the argument that the Gregory Case was applicable. However, it is uncontradicted that there was no such intent, but the corporation was meant to operate as a patent holding corporation in connection with the gyroscope business which the buyer was purchasing from the Research Company. Thus, with an intention to operate a corporation whose business purpose was to hold the patents, it is clear that Patent Corporation was a corporation within the reorganization provisions as construed in Gregory v. Helvering and the Electrical Securities Case, supra.

What took place here is not only in form but in substance a reorganization in conformity with the terms of section 112 (i) (1) (B) and section 112(g) of the Revenue Act of 1928, so that no gain is recognized to the petitioner on the distribution to her of the Patent Corporation shares in pursuance of this plan of reorganization.

The petitioner argues that even if no reorganization occurred, nevertheless the Commissioner was in error in treating the transaction as a distribution by Development Company of a $1,000,000 dividend in the form of patents to its stockholders. The moment before these transfers, Development Company had, as already stated,

only $51,015.28 in undistributed profits. The petitioner contends that Development Company never realized any gain from these transfers and the disposal of its patents since the $1,000,000 was paid directly to its shareholders and not to Development Company. It therefore follows, the petitioner argues, that Development Company did not have sufficient undistributed profits within section 115(a) of the 1928 Revenue Act, 26 U.S.C.A. § 115 (a) and note, to enable the Commissioner to hold that it made a $1,000,000 dividend distribution. But we do not find it necessary to determine this claim since we hold there was a reorganization.

Decision reversed.