# LEWIS et al. v. COMMISSIONER OF INTERNAL REVENUE.

## No. 4188.

Circuit Court of Appeals, First Circuit.

April 9, 1947.

Rehearing Denied May 14, 1947.

840

Before MAGRUDER, MAHONEY and
WOODBURY, Circuit Judges.

James F. Armstrong, of Providence, R. I.
(Walter F. Gibbons, of Providence, R.I., on
the brief), for petitioners.

Morton K. Rothschild, Sp. Asst. to the
Atty. Gen. (Sewall Key, Acting Asst. Atty.
Gen., and Helen R. Carloss, Sp. Asst. to
the Atty. Gen., on the brief), for Commis-
sioner of Internal Revenue.

MAHONEY, Circuit Judge.

Petitioners seek review of the decision
of the Tax Court redetermining a deficien-
cy in income taxes for the calendar year
1941. The factual situation giving rise to
the controversy here in question may be
briefly stated.

Petitioners are the surviving trustees un-
der the will of John B. Lewis who died
December 29, 1930. On January 9, 1931
John D. Lewis, Inc., a Rhode Island cor-
poration, was organized to take over the
sole proprietorship business operated by
John B. Lewis prior to his death. Petition-
ers, as trustees, acquired all the issued and
outstanding stock of the corporation con-
sisting of 4,000 shares of common stock
having a basis of $435,000. At the begin-
ning of 1941, the tax year in question, the
corporation was engaged in three different
lines of business, the manufacture of syn-
thetic resins, the manufacture of chemicals
for the textile industry and the distribu-
tion of chemicals. On June 30, 1941 the
corporate name was changed to John D.
Lewis Company. In July of the same year
two branches of the business, the synthetic
resin business and the chemical distribution
business, were sold for a consideration in
the aggregate of approximately $325,000
in cash and marketable securities. The
corporation continued to operate the re-
maining line of business.

On December 27, 1941, the board of di-
rectors of John D. Lewis Company (here-
inafter called the old company) voted to
transfer to John D. Lewis Company (here-
inafter called the new company), a corpo-
ration to be organized, all the assets of the
old company other than (1) securities and
(2) cash in excess of $90,000, i. e. essen-
tially the assets pertaining to the remaining
line of business were to be transferred to
the new company. The stockholders, peti-
tioners herein, on the same day, ratified
the action of the directors and also voted
to change the name of the old company to
Traverse Street Corporation. The change
of name was accomplished on December
29, 1941.

The new company was incorporated on
December 29, 1941 with an authorized capi-
tal of 500 shares of no par common stock.
Both the old company and the new com-
pany were Rhode Island corporations. At
11:00 a. m. on the same day the assets of
the remaining line of business of the old
company referred to in the previous reso-
lutions amounting to approximately $156,-
000 were transferred to the new company
and the old company received in exchange
all the stock of the new company. At
11:30 a. m. on the same day, after the ex-
change had been effected, the directors of
the old company voted to liquidate that
company by distributing all the remaining
assets including the stock of the new com-
pany to the shareholders of the old com-
pany in cancellation and redemption of the
outstanding 4,000 shares of common stock
of the old company. Immediately there-
after the stockholders of the old company
ratified this action of the directors. There-
upon, the following assets, at the fair mar-
ket value indicated, were distributed to the
petitioners, the sole stockholders of the old
company, in complete cancellation and re-

demption of all the issued and outstanding stock of that company:

| | |
|---|---|
| Cash | $166,375.74 |
| Stock of John D. Lewis Company (the new company) | 156,598.61 |
| Other stocks and bonds | 177,496.15 |
| Notes | .636.80 |
| Total | $501,107.30 |

The Tax Court found that the gain realized by the petitioners on this transaction was $66,107.30 and petitioners do not now dispute this amount. The earnings or profits of the old company accumulated since 1931 exceeded on December 29, 1941 the amount of gain realized.

Petitioners on their income tax return reported the gain as a gain realized upon complete liquidation of a corporation under Internal Revenue Code § 115(c)[1] and taxable as a long term capital gain under Internal Revenue Code § 117, 26 U.S.C.A. Int.Rev.Code, § 117. The Commissioner assessed a deficiency since he determined that the liquidating transfer by the old company constituted an exchange pursuant to a plan of reorganization of the old company within the meaning of Internal Revenue Code § 112(b) (3)[2] and that the gain was therefore taxable in full as the distribution of a taxable dividend under Internal Revenue Code § 112(c) (1) and (2).[3]

The Tax Court sustained the Commissioner. It found that the transfer by the

---

[1] I.R.C. § 115(c), 26 U.S.C.A. Int.Rev. Code, § 115(c).

"Distributions in liquidation.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117, the gain so recognized shall be considered as a short-term capital gain, except in the case of amounts distributed in complete liquidation. For the purpose of the preceding sentence, 'complete liquidation' includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding from the close of the taxable year during which is made the first of the series of distributions under the plan, (1) three years, if the first of such series of distributions is made in a taxable year beginning after December 31, 1937, or (2) two years, if the first of such series of distributions was made in a taxable year beginning before January 1, 1938. In the case of amounts distributed (whether before January 1, 1938, or on or after such date) in partial liquidation (other than a distribution to which the provisions of subsection (h) of this section are applicable) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. * * *" Revenue Act 1938, § 115(c). ·

[2] I.R.C. § 112(b) (3) "Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

[3] I.R.C. § 112(c) "Gain from exchanges not solely in kind. (1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) * * * of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph * * * to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

"(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

old company of part of its assets to the new company in exchange for all the stock of the new company was a reorganization literally within the definition of Internal Revenue Code § 112(g) (1) (D).[4] The Tax Court then applied §§ 112(b) (3) and 112(c) (1) and (2), holding that the distribution had the "effect of the distribution of a taxable dividend" under the authority of Commissioner v. Estate of Bedford, 1945, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611.

Petitioners' chief argument is directed at the Tax Court's finding that a "reorganization" occurred. It is asserted that the requirement of "business purpose" as laid down by Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A. L.R. 1355 is lacking. The Tax Court found as a fact that: "The purposes of the transfer of the operating assets from the old company to the new company were to continue the chemical manufacturing business under the new company and to liquidate and distribute the remaining assets of the old company to its stockholders." In the course of its opinion the Court stated again that one of the reasons for the transfer of assets was to continue the chemical manufacturing business and that the new company was not formed for the purpose of liquidating or disposing of the assets it had acquired. The Tax Court went on to say: "To assert that the primary purpose in this case was the complete liquidation of the old company and that the organization of the new company was but an incident thereof is to obscure the essential nature of the transaction. From the evidence, it seems to us that the real end desired was not complete liquidation but rather partial liquidation. There was no purpose to wind up the business completely. The chemical manufacturing business, one of the three lines of business formerly conducted by the old company, was to be continued. * * * We conclude that there was a plan of reorganization within the meaning of the

statute, and that the distribution to petitioners in liquidation of the old company was but one step in the integrated transaction * * *".

■ There can be no doubt that the transaction between the old and new companies is literally within the definition of "reorganization" of Internal Revenue Code § 112(g) (1) (D). But the Supreme Court in the Gregory case, where the transferee corporation was merely used as a conduit for the distribution of a dividend to the shareholder, has said that in addition to compliance with the literal terms of the statutory definition there must be a "business purpose" i. e., it is necessary that there be "a transfer made 'in pursuance of a plan of reorganization' § 112(g) of corporate business; and not a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either * * *". 293 U.S. at page 469, 55 S.Ct. at page 267, 79 L.Ed. 596, 97 A.L. R. 1355.

Treasury Regulation 103, § 19.112(g)-1 states: " * * * The purpose of the reorganization provisions of the Internal Revenue Code is to except from the general rule specifically described exchanges incident to such readjustments of corporate structures, made in one of the particular ways specified in the Code, as are *required by business exigencies* * * * such transactions and such acts must be an *ordinary and necessary incident of the enterprise* and must provide for a continuation of the enterprise * * *". And § 112(g)-2 says: " * * *. Moreover, the transaction or series of transactions, embraced in a plan of reorganization must not only come within the specific language of section 112(g) (1), but the readjustments involved in the exchanges effected in the consummation thereof must be undertaken for *reasons germane to the continuance of the business* of a corporation a party to the reorganization * * *".

4 I.R.C. § 112(g) [As amended by the Revenue Act of 1939, c. 247, 53 Stat. 862, Sec. 213(b)]. "Definition of Reorganization. As used in this section * * * and section 113 * * *—
"(1) The term 'reorganization' means * * * (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred * * *." 26 U.S.C.A. Int.Rev.Code, § 112(b) (3), (c) (1, 2), (g) (1) (D).

(Italics supplied). See also Helvering v. Winston Bros. Co., 8 Cir., 1935, 76 F.2d 381.

█ The "business purpose" requirement for § 112(g) reorganizations has often been used to defeat taxpayer contentions for postponement of taxes under the tax free exchange provisions of § 112(b). See Electrical Securities Corporation v. Commissioner, 2 Cir., 1937, 92 F.2d 593; Helvering v. Elkhorn Coal Co., 4 Cir., 1938, 95 F.2d 732, certiorari denied, 1938, 305 U.S. 605, 59 S.Ct. 65, 83 L.Ed. 384. Ordinarily as in the Gregory case the use of the transferee company to avoid taxes and its immediate dissolution are sufficient to indicate that the transaction was not "required by business exigencies", was not a "necessary incident of the [conduct of the] enterprise" and was not undertaken for "reasons germane to the continuance of the business". But immediate dissolution of the transferee corporation does not necessarily indicate a Gregory situation if there were business reasons for its creation. Lea v. Commissioner, 2 Cir., 1938, 96 F.2d 55. Usually, however, the continuance of the business in the hands of the transferee (or by a reorganized company in the case of a recapitalization) is deemed sufficient indication of the required "business purpose" and the Treasury Regulations quoted above list this as a requirement for the statutory reorganization. On the other hand, the court in the Electrical case applied the Gregory doctrine where the existence of the transferor was ephemeral despite continuation of the business by the transferee. But the immediate liquidation and dissolution of the transferor is frequently part of the plan of reorganization and does not prevent the reorganization from being within the statute if the transaction conforms to the statutory definition and "business purpose" is found. See Commissioner v. Whitaker, 1 Cir., 1938, 101 F.2d 640; Helvering v. Schoellkopf, 2 Cir., 1938, 100 F.2d 415; Gross v. Commissioner, 5 Cir., 1937, 88 F.2d 567. It can therefore be readily observed that the "business purpose" requirement is not necessarily satisfied by a finding that the purpose of the exchange was the continuation of the business in the hands of the transferee since every decision depends on the particular facts in each case.

█ Here then the Tax Court's finding of fact that the purposes of the transfer were to continue the business under the new company and to liquidate and dissolve the old company cannot be treated as necessarily indicating absence or presence of "business purpose". Moreover, we have difficulty in finding the "business exigencies" or "reasons germane to the continuance of the business" which necessitated this transaction. The only result of this "reorganization" obvious to us seems to have been to place the old company in a position to effect a complete liquidation. When the series of transactions here accomplished are examined as a unit rather than in their separate parts, see Bassick v. Commissioner, 2 Cir., 1936, 85 F.2d 8, certiorari denied 1936, 299 U.S. 592, 57 S.Ct. 120, 81 L.Ed. 436; Hazeltine Corporation v. Commissioner, 3 Cir., 1937, 89 F.2d 513, and regard is had for substance rather than form, see Case v. Commissioner, 9 Cir., 1939, 103 F.2d 283, the ultimate result seems to have been merely the partial liquidation of the old company. The Tax Court in its opinion and the Commissioner in his brief concede that the effect of these transactions was a partial liquidation. Since the gain under a partial liquidation would be treated under the then existing provisions of the Internal Revenue Code as a short term capital gain, the taxpayer of course seeks to avoid this result. If the avoidance of the tax consequences of a partial liquidation was the sole consideration for the "reorganization" we are unable to discern how the Gregory requirement has been satisfied and especially is this true if shareholder business purposes are considered as not satisfying the "business purpose" requirement. See Bazley v. Commissioner, 3 Cir., 1946, 155 F.2d 237. None of the usual examples of "business purpose" seem to be here present; e. g. modification of the corporate structure, Helvering v. Winston Bros. Co., supra; the addition of new business enterprises or the severance of part of the old, Gross v. Commissioner, supra. Further examples may be found in the list of 10 "business purposes" shown to exist for the "reorganiza-

tion" in Commissioner v. Kolb, 9 Cir., 1938, 100 F.2d 920, 926.

The taxpayer here urges us to reverse the Tax Court because he alleges that "business purpose" is lacking. It is our view that if the Tax Court found either that "business purpose" existed or was lacking, the rule of the Dobson case would prevent our reexamination of the question. See Bazley v. Commissioner, supra. If on the other hand the Tax Court were to say that a "reorganization" under § 112(g) (1) had occurred despite the lack of "business purpose", it would seem that a clear cut question of law would be presented. See Gregory v. Commissioner, supra. Likewise review might be had of the Tax Court's construction of "business purpose" if not in conformity with court decisions or the Regulations, see Helvering v. Rankin, 1935, 295 U.S. 123, 131, 55 S. Ct. 732, 79 L.Ed. 1343, although delimitation of the scope of the Dobson rule is difficult to state in the abstract. See Note (1947) 60 Harvard Law Review 448 passim. But the findings of fact, the inferences to be drawn therefrom and their application to the rules of law are functions for the Tax Court and are subject only to limited review on the question of substantial evidence. See Commissioner v. Scottish American Investment Co., Ltd., 1944, 323 U.S. 119, 123, 124, 65 S.Ct. 169, 89 L. Ed. 113. Here the Tax Court made no finding concerning "business purpose" except the limited finding mentioned above which we pointed out as not being determinative. Nor does the statement in the court's opinion that "there was a plan of reorganization within the meaning of the statute" demonstrate that a finding of "business purpose" was made inferentially since the Tax Court may have ignored that requirement or applied the wrong standard or an improper construction of "business purpose" to the facts and inferences drawn therefrom.

Where an essential finding is lacking and such finding is necessary to a proper decision of the case, the correct procedure is to remand the case to the Tax Court to make such a finding and to render a decision accordingly. See Helvering v. Rankin, supra; Von's Investment Co., Ltd. v. Commissioner, 9 Cir., 1937, 92 F.2d 861. This procedure should also be followed where only the ultimate finding is lacking even though the reviewing court should consider itself competent to make such findings. Doernbecher Mfg. Co. v. Commissioner, 9 Cir., 1935, 80 F.2d 573; Belridge Oil Co. v. Helvering, 9 Cir., 1934, 69 F.2d 432.[5] Thus we are obliged to remand the case even though there be findings of fact which we would consider a foundation for a proper finding of "business purpose".

The Commissioner has argued the applicability of Love v. Commissioner, 3 Cir., 1940, 113 F.2d 236. Although the facts there are quite similar to those presented here two points of difference should be noticed; (1) there was an amalgamation of three corporations to form the new corporation, the transferee, and (2) both the taxpayer and the Commissioner in 39 B. T.A. 172 agreed that there was a "reorganization", the only dispute being whether liquidation was part of the "plan of reorganization".

The lack of a finding of business purpose in this case is understandable. Rarely does the taxpayer urge that a reorganization under the statute does not exist. In the usual case the taxpayer in seeking the tax advantages of the tax free exchange provisions of § 112(b) urges that a transaction within the literal terms of the statute is a "reorganization" while the Commissioner asserts that a deficiency exists because the "reorganization" lacks "business purpose". In such cases a definite finding of lack of "business purpose" may usually be found. See Bazley v. Commissioner, 1945, 4 T.C. 897 affirmed supra; Kleeman v. Commissioner, 1936, 35 B.T. A. 17. In the present case it may well be that this ground was not urged upon the Tax Court. But for purposes of review such a finding is essential. Moreover the

[5] It should be noted that the citations given are mainly of cases decided before Dobson. Any statements therein of reviewability of mixed questions of law and fact must of course be viewed in the light of Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248.

value of precedents derived from the process of judicial inclusion and exclusion should also be considered. See Paul, Studies in Federal Taxation (Third Series 1940) p. 129-130.

We do not intend that this opinion should in any way be interpreted as imposing any limitation on the Tax Court when it comes to exercise its function. What we have said here has been for the purpose of indicating the difficulty we have in either affirming or reversing the decision before us. And on remand to it that Court may if it deems proper take further evidence. Von's Investment Co., Ltd. v. Commissioner, supra.

Other grounds for reversal advanced by the taxpayer do not seem to warrant further discussion by us since they seem to have been adequently covered by the opinion of the Tax Court with which we are in accord.

The decision of the Tax Court is vacated and the case remanded to that court for further proceedings in accord with this opinion.