## ROEBLING v. COMMISSIONER OF IN-TERNAL, REVENUE.

### No. 8519.

Circuit Court of Appeals, Third Circuit.
Argued Jan. 20, 1944.

Decided July 1, 1944.

Floyd F. Toomey, of Washington, D. C. (Ellsworth C. Alvord of Washington, D. C., and Ferdinand Tannenbaum, of New York City, New York, on the brief), for petitioner.

Ray A. Brown, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, and J. Louis Monarch, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before JONES and McLAUGHLIN, Circuit Judges, and KALODNER, District Judge.

KALODNER, District Judge.

This appeal presents three questions: (1) Whether the transaction hereafter stated between a lessor corporation and a. lessee corporation constitued a "statutory merger", within the meaning of Sec. 112(g) (1) (A) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code, § 112(g) (1) (A);[1] (2) whether the doctrine of "continuity of interest" as enunciated in LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355, applies to a "statutory merger", and (3) whether under the facts a "continuity of interest" actually existed.

Taxability on gain resulting to the petitioner on the exchange of stock in the lessor corporation for bonds of the lessee corporation under the provisions of Sec. 112(b) (3) of the Revenue Act of 1938[2] depends on the disposition of the issues above stated.

The facts are all stipulated. Summarized they are as follows:

[1] "Sec. 112. Recognition of gain or loss. * * *

"(g) Definition of reorganization. As used in this section and section 113—

"(1) The term 'reorganization' means (A) a statutory merger or consolidation, * * *."

[2] "Sec. 112. Recognition of gain or loss

"(a) General rule. Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) Exchanges solely in kind—
* * * * * * *

"(3) Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

Petitioner, an individual residing in Trenton, New Jersey, filed a Federal income tax return for the calendar year 1938 with the Collector of Internal Revenue for the First District of New Jersey.

On December 5, 1935, petitioner acquired by gift 166 shares of the stock of South Jersey Gas, Electric and Traction Co. (hereinafter referred to as South Jersey). This stock had been acquired by petitioner's donor on March 12, 1914, at a cost of $16,600.

South Jersey was a corporation organized on August 31, 1900, under the laws of the State of New Jersey, for the purpose of furnishing electricity and gas for public and private use in that state.

In June, 1903, South Jersey had leased all its franchises, plants and operating equipment to Public Service Corporation of New Jersey for 900 years. The lessee was to pay rent which beginning December 1, 1908, amounted to $480,000 per annum. In addition the lessee agreed to pay the interest charges on the lessor's bonded indebtedness, all taxes, insurance and such sums as were necessary to maintain, repair, improve and extend the leased properties. *All replacements and additions became the property of South Jersey subject to the terms of the lease.*

The lease further provided that *upon default of the terms of the lease* for a period of 30 days, after notice, *South Jersey could terminate the lease, reenter and reacquire the property and additions and extensions thereto.*

Under the terms of the lease South Jersey could enter upon the leased property for the purpose of inspecting it and determining its condition and the character of the management and whether the covenants of the lease were being complied with.

In July, 1924, this lease was assigned by Public Service Corporation of New Jersey to Public Service Electric and Gas Company which assumed the obligations thereof.

From December 1, 1908, to June 1, 1937, the net rentals received by South Jersey, the lessor company, were distributed to its stockholders at the rate of 8% per annum on the par value of its stock. South Jersey had outstanding 60,000 shares of capital stock of $100 par value, of which Public Service Electric and Gas Company, the assignee of the lease, held 1,705 shares, and Public Service Corporation of New Jersey, the original lessee, held 15,773 shares. The remaining 42,521 shares were held by other interests. Public Service Corporation of New Jersey held substantially all the voting stock of Public Service Electric and Gas Company.

Public Service Electric and Gas Company as a part of its unified electrical system held and operated under long-term leases the properties of many other utility companies. For more than ten years Public Service and its parent, Public Service Corporation of New Jersey, had engaged in a systematic effort to acquire the fee to these properties, and by 1927 had acquired more than two-thirds of the stock of certain of these lessor companies. A projected merger of the lessee companies into Public Service Electric Gas through the exchange of stock in the lessor companies for 6% cumulative preferred stock of Electric and Gas callable in three years was enjoined by the Chancery Court of New Jersey as unfair to the minority stockholders of those companies. Outwater v. Public Service Corporation, 103 N.J,Eq. 461, 143 A. 729.

On May 10, 1937, the directors of South Jersey and of Public Service Electric and Gas Company adopted a "Plan of Reorganization" under which it was proposed that the former company be merged into the latter in accordance with the statutes of New Jersey. This plan provided that the stockholders of South Jersey (other than Public Service Electric and Gas Company) should exchange, dollar for dollar, their stock in South Jersey for 8% one hundred years first mortgage bonds of Public Service Electric and Gas Company. These bonds were to be issued under a prior mortgage of Public Service Electric and Gas Company dated August 1, 1924, and under a supplemental indenture later to be executed. It was expressly provided in the "Agreement of Merger" executed on the same day: "The capital stock of the Public Service Electric and Gas Company * * * will not be changed by reason of this agreement." Also, the stock of South Jersey held by Public Service Electric and Gas Company was not to participate in the exchange but was to be delivered up and cancelled.

The "Agreement of Merger" was accepted by the stockholders of South Jersey and of Public Service Electric and Gas Company, and approved by the Board of Public Utilities Commissioners of the State of New Jersey and by the Federal Power

Commission. The "Agreement of Merger" with the certificates of the secretaries of the constituent companies as to the confirmatory votes of the stockholders, and the certificates of approval of the Public Utility Commissioners of New Jersey and of the Federal Power Commission was filed with the Secretary of State of New Jersey on November 17, 1938.

The "Agreement of Merger" was consummated pursuant to its provisions. In accordance therewith the taxpayer received in exchange for his 166 shares of stock in South Jersey, $16,600, principal amount of 8% bonds which on November 25, 1938, had a fair market value of $34,777.

The Commissioner determined that the difference between the basis of the taxpayer's stock in South Jersey and the fair market value of the bonds received in exchange therefor must be recognized as taxable income in 1938 and he asserted a deficiency which the Tax Court sustained, so far as it was based upon this item.

The issues presented here arise by reason of taxpayer's contention (1) that the merger of South Jersey into Public Service Electric and Gas Co. was a "true statutory merger" under the laws of .the state of New Jersey and therefore the exchange of stock for bonds was not a taxable event under Sec. 112 of the Revenue Act of 1938; (2) that since there was a "true statutory merger" the "continuity of interest" doctrine in the LeTulle v. Scofield case is inapplicable and (3) that in any event a "continuity of interest" actually existed in the instant case.

■■■ As to the taxpayer's first two contentions, which may be considered together: The admitted fact that the merger of the two corporations was a "true statutory merger" under the New Jersey law is not dispositive of the question as to whether there was a "statutory merger" here

within the meaning of Sec. 112(g) (1) (A). It is well-settled that a State law cannot alter the essential characteristics required to enable a taxpayer to obtain exemption under the provisions of a Federal Revenue Act.[3]

We so held in Commissioner of Internal Revenue v. Gilmore's Estate, 3 Cir., 130 F.2d 791. Indeed that case is completely dispositive of the taxpayer's first two contentions. In Gilmore's Estate we found that though there was, in that case, a "true statutory merger" under the identical laws of New Jersey involved here, (1) such "true statutory merger" is insufficient without more to qualify as a "reorganization" under the Revenue Act, and (2) that a "continuity of interest" as enunciated in numerous decisions of the Supreme Court of the United States and the pertinent Treasury Regulation 101[4] must still be present to establish a true reorganization. In Gilmore's Estate we said, on page 794:

"It is now settled that whether a transaction qualifies as a reorganization under the various Revenue Acts *does not turn alone upon compliance with the literal language of the statute.* The judicial interpretation has determined that something more may be needed and that, indeed, under some circumstances, something less will do. Our concern in this case is the 'something more' since we have concluded that there was a literal compliance. * * *

"The reorganization provisions were enacted to free from the imposition of an income tax purely 'paper profits or losses' wherein there is no realization of gain or loss in the business sense *but merely the recasting of the same interests in a different form,* the tax being postponed to a future date when a more tangible gain or loss is realized. * * *" (emphasis supplied)

Morgan Manufacturing Co. v. Commissioner, 4 Cir., 124 F.2d 602, is in agreement

---

[3] Mutual Fire Insurance Co. of Germantown v. United States, 50 F.Supp. 665.

[4] Treasury Regulation 101, Article 112 (g) (1) reads as follows:

"The purpose of the reorganization provisions of the Internal Revenue Code is to except from the general rule certain specifically described exchanges incident to such readjustments of corporate structures, made in one of the particular ways specified in the Code, as are required by business exigencies, and which effect only a readjustment of continuing interests in property under modified corporate forms. Requisite to a reorganization under the Code are a continuity of the business enterprise under the modified corporate form, and a continuity of interest therein on the part of those persons who were the owners of the enterprise prior to the reorganization. * * * Both the terms of the specifications and their underlying assumptions and purposes must be satisfied in order to entitle the taxpayer to the benefit of the exception from the general rule."

with our ruling in Gilmore's Estate. In Helvering v. Alabama Asphaltic Limestone Co., 1942, 315 U.S. 179, at page 182, 62 S.Ct. 540, at page 542, 86 L.Ed. 775, the Supreme Court of the United States succinctly stated the rule as follows:

"From the Pinellas case, Pinellas, Ice & Cold Storage Co. v. Commissioner of Internal Revenue, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428, to the LeTulle case, LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L. Ed. 355, it has been recognized that a transaction may not qualify as a 'reorganization' under the various revenue acts though the literal language of the statute is satisfied. See Paul, Studies in Federal Taxation (3d Series), p. 91 et seq. The Pinellas case introduced the continuity of interest theory to eliminate those transactions which had 'no real semblance to a merger or consolidation' (287 U.S. page 470, 53 S.Ct. [257] 77 L.Ed. 428) and to avoid a construction which 'would make evasion of taxation very easy.' * * *"

That Sec. 112 has made "the continuity of interest test * * * much stricter" was held in Helvering v. Southwest Corporation, 315 U.S. 194-198, 62 S.Ct. 546, 550, 86 L.Ed. 789. Said the Court, page 198 of 315 U.S., at page 550 of 62 S.Ct.:

"Under the statute involved in Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775, decided this day, there would have been a 'reorganization' here. For the creditors of the old company had acquired substantially the entire proprietary interest of the old stockholders. See Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284. But clause (B) of § 112(g) (1) of the 1934 Act [26 U.S.C.A. Int.Rev.Acts, page 695] effects an important change as respects transactions whereby one corporation acquires substantially all of the assets of another. See S. Rep. No. 558, 73d Cong., 2d Sess., Committee Reports, Revenue Acts 1913-1938, pp. 598-599. *The continuity of interest test is made much stricter.* See Paul, Studies in Federal Taxation (3rd Series), pp. 36-41. * * *" [5] (Emphasis supplied)

In view of the cases cited we cannot subscribe to the taxpayer's contention that under Sec. 112(g) (1) (A) of the Revenue Act of 1938 the requirements of New Jersey law supersede the "continuity of interest" test as applied in LeTulle v. Scofield and the numerous other decisions.

The taxpayer's remaining contention that the requisite "continuity of interest" is present under the peculiar facts in this case is premised on a rather novel theory. He urges that "prior to the merger, the stockholders of South Jersey had *no proprietary interest* in its properties in any real sense", and that in sanctioning the merger "the decision of the New Jersey courts recognized that the stock in the lessor companies was substantially equivalent to a perpetual 8% bond."

This contention places the taxpayer in an anomalous position. Whereas the "continuity of interest" principle is predicated on the existence of a proprietary right which must be carried over into the reorganized corporation, the taxpayer at one and the same time asserts that a "continuity of interest" existed in the reorganized company, even though there was *no* proprietary interest by the stockholders in the merged corporation to be carried over into the reorganized corporation.

[5] Following is an excerpt from the Committee Report referred to in Helvering v. Southwest Corporation:

"Your committee is in complete agreement with the purposes of the House bill which aim at tax-avoidance schemes in this connection. However, some modifications are recommended in order to bring about a more uniform application of the provisions in all 48 of the States. Not all of the States have adopted statutes providing for mergers or consolidations; and, moreover, a corporation of one State can not ordinarily merge with a corporation of another State. The committee believes that it is desirable to permit reorganizations in such cases with restrictions designed to prevent tax avoidance. Consequently, the committee recommends the insertion in the House bill of an addition to the definition of the term 'reorganization' as follows:

"'(B) the acquisition by one corporation in exchange solely for its voting stock: of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or of substantially all the properties of another corporation;'

"The committee believes that these transactions, when carried out as prescribed in this amendment, are in themselves sufficiently similar to mergers and consolidations as to be entitled to similar treatment."

814

It is unnecessary, however, to further explore this contention because two things are so clear that he who runs may read. First, the stockholders in South Jersey had a definite and clearly fixed proprietary interest in its property. The lease provided that all replacements and additions to the leased property were to be the property of South Jersey and subject to the terms and conditions of the lease. Further, on the expiration of the lease all the property subject to its terms was to be returned to South Jersey. South Jersey owned the property under lease even though that lease was for a 900-year term. The lease further provided that upon default of its terms South Jersey could terminate the lease and *re-enter and re-acquire the property and additions and extensions thereto.*

In view of the incontrovertible facts the taypayer's argument that the stockholders in South Jersey had *no* proprietary interest is without basis.

Finally, it is equally clear that when the stockholders of South Jersey exchanged their stock in that corporation for the long-term bonds of Public Service Electric and Gas Company, they surrendered their proprietary interest and simply became creditors of Public Service. They no longer owned any of the former property of South Jersey and they had no proprietary interest in the property of Public Service. The Tax Court succinctly described the situation when it stated:

"* * * It follows that no continuing stake in the merged enterprise was retained by South Jersey or its stockholders, and hence that the requisite continuity of interest is not furnished either by the proprietary interests acquired by the merged corporation, nor by the bondholders' status conferred upon the former shareholders." (emphasis supplied)

Taxpayer urges that the substance of the transaction here is close to that involved in Commissioner of Internal Revenue v. Neustadt's Trust et al., 2 Cir., 131 F.2d 528. That is not so. In the Neustadt's Trust case the taxpayers merely exchanged their holdings of long-term debenture bonds for an equivalent face amount of short-term debenture bonds and both the Tax Court and the United States Circuit Court of Appeals for the Second Circuit ruled that the transaction was part of a "recapitalization" where no transfer of

assets and no change of capital stock occurred.

For the reasons stated the decision of the Tax Court of the United States is affirmed.