SOUTHWEST NATURAL GAS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15243. Promulgated January 27, 1950.

*A. O. Dawson, Esq.,* and *Paul Smith, Esq.,* for the petitioner.
*John W. Alexander, Esq.,* for the respondent.

## OPINION.

Tyson, *Judge*: The only contested issue presented for decision is whether the statutory merger of Peoples with petitioner on December 28, 1940, constituted a purchase by petitioner of the assets of Peoples as determined and herein contended by respondent, or, as contended by petitioner, constituted a "reorganization" within the meaning of that term as defined by subsection (g) (1) (A) of section 112 of the Internal Revenue Code,[1] which section provides the general rule for the recognition of gain or loss upon the sale or exchange of property and for the exceptions thereto in specifically described exchanges incident to readjustments of corporate structures or corporate reorganizations.

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

  &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

 (g) DEFINITION OF REORGANIZATION.—As used in this section (other than subsection (b) (10) and subsection (l)) and in section 113 (other than subsection (a) (22))—

  (1) The term "reorganization" means (A) a statutory merger or consolidation &ast;   &ast;   &ast;.

The facts herein establish, and the respondent does not contend otherwise, that the petitioner and Peoples, both Delaware corporations, duly complied with the provisions of the Revised Code of Delaware of 1935, chapter 65, section 59, pertaining to the procedure for consolidation* or merger of corporations and pursuant thereto duly effectuated a statutory merger of Peoples with and into the petitioner as the continuing corporation, on December 28, 1940. Accordingly, in the instant proceeding we have a statutory merger of Peoples with petitioner under state law and a compliance with the literal language of the above definition of the term "reorganization." However, the parties are in agreement on the established principle that such literal compliance alone is not sufficient, and both cite *Roebling* v. *Commissioner*, 143 Fed. (2d) 810; certiorari denied, 323 U. S. 773, as authority that, in addition thereto and to constitute through merger a "reorganization" within the meaning of the Federal income tax statutes, the transaction must meet the test of the "continuity of interest" doctrine enunciated in numerous decisions of the Supreme Court of the United States to distinguish a transaction which, though taking the form of a reorganization, constitutes a taxable sale or exchange from a transaction which in fact as well as in form constitutes a tax-free reorganization within the intendment of the Federal statute. The parties differ only with regard to whether the "continuity of interest" test has been met under the facts of this case.

In the *Roebling* case, *supra*, two corporations complied with state law providing for mergers, but, since the stockholders of the merged corporation received in exchange therefor *only* long term bonds of the continuing corporation, the court held that they thereby surrendered their former proprietary interest in certain property and simply became creditors of the continuing corporation, and that the transaction was not a "reorganization" within the meaning of section 112 (g) (1) (A) of the Revenue Act of 1938, which provided, "(1) The term 'reorganization' means (A) a statutory merger or consolidation." In reaching its conclusion the court relied upon the "continuity of interest" doctrine first introduced in Supreme Court decisions in *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462, and as applied in *Le Tulle* v. *Scofield*, 308 U. S. 415, and other cited cases.

In the instant case and under the agreement of merger, all of Peoples' assets were acquired by petitioner in exchange for certain amounts of stock, bonds, cash, and the assumption of debts. As to the stock involved, the owners of 59.2 per cent of Peoples' common shares received 16.4 per cent of petitioner's outstanding common stock, representing their continuing proprietary interest in the enterprise after the merger. The question here is thus narrowed to one of whether such retained proprietary interest was sufficient to satisfy the test of

the "continuity of interest" doctrine enunciated by court decisions.

An examination of numerous Supreme Court decisions involving application of the "continuity of interest" test leads to the conclusion that there is no precise formula for that test, but, instead, different language has been used to express a meaning of the phrase "continuity of interest" as applied to the facts involved in each particular case. In cases involving an exchange in a merger or consolidation alleged to constitute a "reorganization" as defined by the tax statutes, it has been held, in *Pinellas Ice & Cold Storage Co.* v. *Commissioner, supra* (1933), that an exchange for cash and promissory notes constituted a sale because such notes were the equivalent of cash and the transferor did not acquire a sufficiently definite "interest in the affairs of the purchasing company"; in *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378 (Dec. 16, 1935), that an exchange for $426,842.52 in cash and 18,000 shares of common stock valued at $540,000 constituted a merger "reorganization" because the statute does not inhibit a substantial change in the relationship of the transferor to the assets conveyed and the transferor acquired a "definite and material" interest in the affairs of the transferee, represented by a "substantial part of the value of the thing transferred"; in *Nelson Co.* v. *Helvering*, 296 U. S. 374 (Dec. 16, 1935), that an exchange for $2,000,000 cash and the entire authorized issue of 12,500 shares of nonvoting preferred stock constituted a merger "reorganization" because the transferor acquired "a definite and substantial interest in the affairs of the purchasing corporation," represented by ownership of the preferred stock, although denied voting rights, since neither participation in the management of nor a controlling stock interest in the transferee is requisite; and in *Le Tulle* v. *Scofield, supra* (1940), that an exchange for cash and bonds constituted a sale because the transferor became solely a creditor of the transferee and did not retain "any proprietary interest in the enterprise"; and, further, that the statute is "not satisfied unless the transferor retained a substantial stake in the enterprise," as for instance, such a stake as was thought to be retained in the *Minnesota Tea* and *Nelson Co.* cases, *supra*.

Since the types of exchanges in different mergers or consolidations of necessity vary considerably one from the other in order to meet the widely varying circumstances as to capital structure, etc., involved in different transactions of that character, and in the light of the pronouncements in the above cited cases, we conclude that the basic test is whether, under all the facts and circumstances involved in a particular merger or consolidation, it can be said that the transferor corporation or its stockholders retained a proprietary stake in the enterprise represented by a definite and material interest in the affairs

of the transferee company and, as was said in the *Minnesota Tea* case, *supra*, that such retained interest represents "a substantial part of the value of the thing transferred," so that the transaction genuinely partakes of the true nature of a merger or consolidation and, further, that, other than being "substantial," there is no precise measure of the extent of such proprietary stake requisite to satisfy the "continuity of interest" test laid down by court decisions. Each case must rest upon its own facts in the light of prior decisions.

In the instant case that part of the consideration consisting of bonds did not represent a proprietary interest in the assets transferred, *Le Tulle* v. *Scofield, supra,* and for the purposes of this opinion may be considered as being in the same category as the cash consideration, thus in effect treating the transfer as one for cash and stock, as was true in the *Minnesota Tea* case, *supra.* Accordingly, the principle enunciated and as applied in deciding the last cited case is determinative of the instant case.

In the *Minnesota Tea* case, *supra*, the assets of one corporation were transferred to another corporation and, as more particularly shown in the Circuit Court's opinion in 76 Fed. (2d) 797, for a total consideration of $966,842.52, consisting of $426,842.52 cash and 18,000 shares of the transferee corporation's stock, which stock had a value of $540,000. In deciding that there was a reorganization, the Supreme Court enunciated the principle that the retained definite and substantial interest represented by stock in a transferee corporation "must represent a substantial part of the value of the thing [assets] transferred. * * * in order that the result accomplished may genuinely partake of the nature of merger or consolidation," and it concluded that the proportion of the total consideration there paid for the transferor corporation's assets represented by the value of the stock of the transferee corporation satisfied the requirement of the principle enunciated.

In the instant case, as in the *Minnesota Tea* case, *supra*, the record discloses no value of the assets transferred other than as evidenced by the consideration paid therefor. Here, the total consideration paid amounted to $663,393.01, consisting of cash and its equivalent amounting to $657,800.51 and common stock of petitioner having a market value of $5,592.50. Such a small fractional portion of the total value of the assets transferred as is represented by the value of the common stock can not in our opinion be said to represent a substantial part of the value of the assets transferred, as is required under the principle enunciated in the *Minnesota Tea* case, *supra*, and we hold that the transaction here involved did not constitute a statutory merger within the provisions of section 112 (g) (1) (A), *supra*, and, therefore, was not a reorganization. On this issue the respondent is sustained.

The petitioner points to the various facts as to continuity of the business enterprise, directors, officers, employees, etc., and particularly to the fact that after the exchange those persons who had owned 59.2 per cent of Peoples' common stock owned 16.4 per cent of petitioner's outstanding common stock, as representing their continuing proprietary interest. Petitioner contends that such continuing proprietary interest in the transferee corporation measured by the 16.4 per cent of its common stock should be regarded as substantial enough to meet the continuity of interest test. We think it should not be so regarded, if for no other reason, than that such method gives no consideration to the value of petitioner's outstanding preferred stock, which is not shown and which, as well as did the common stock, represented an interest in the value of all of petitioner's assets, including those transferred by Peoples, after the consummation of the transaction involved; and it would be necessary to know the value of this outstanding preferred stock in order to arrive at the proper proportion of the interest of the holders of the 16.4 per cent of common stock in the assets transferred by Peoples. And in this connection it may be noted that, while the value of the outstanding preferred stock is not shown, it is obvious that it represented a vastly more valuable interest in petitioner and its assets than did the entire outstanding common stock, since after the transaction was completed petitioner's outstanding 678,000 shares of common stock had a market value of only 5 cents per share or a total of $33,900, while petitioner's outstanding 9,590 shares of preferred stock of $10 par value per share bore an annual dividend rate of $6 per share, or the equivalent of 6 per cent on a $100 per share valuation, and, as shown by an exhibit to the stipulation, was entitled to receive in preference to the common stock, upon any distribution of assets other than dividends from surplus or profits, $100 per share plus any accumulated and unpaid dividends thereon.

Reviewed by the Court.

*Decision will be entered under Rule 50.*