## SOUTHWEST NATURAL GAS CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13379.

United States Court of Appeals
Fifth Circuit.

May 30, 1951.

Joseph C. Hutcheson, Jr., Chief Judge, dissented.

Archie O. Dawson, Paul Smith, New York City, for petitioner.

Hilbert P. Zarky, Sp. Asst. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Charles Oliphant, Chief Counsel, Bu-reau of Internal Revenue, Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

The correctness of asserted deficiencies for corporate income tax for the year 1941 and of declared value excess profits tax and excess profits tax for 1942 due by Southwest Natural Gas Company depends upon whether a merger of Peoples Gas & Fuel Corporation with the taxpayer, effected in accordance with the laws of Delaware, was a sale, as asserted by the Commissioner, or a "reorganization" within the terms of Section 112(g) of the Internal Revenue Code,[1] as contended by the taxpayer. The parties so stipulated the issue in the Tax Court.[2] That Court upheld the Commissioner's determination. Southwest Natural Gas Company has petitioned this Court for review.

The facts found by the Tax Court (which, as facts, are not challenged) and the grounds for its judgment in law thereon are fully set forth in its published opinion.[3] In substance that Court held that literal compliance with the provisions of a state law authorizing a merger would not in itself effect a "reorganization" within the terms applicable under Internal Revenue Statutes; that the test of continuity of interest was nevertheless applicable; and that the transaction in question did not meet this test. This ruling is assigned as error upon grounds which, while variously stated, require for their maintenance establishment of at least one of the propositions that: if the literal language of the statute is complied with, that is if there is a "statutory merger" duly effected in accordance with state law, the statute requires it be treated as a reorganization; or, at least where such merger has been effected the

1. 26 U.S.C.A. § 112(g). "As used in this section * * * (1) The term 'reorganization' means (A) a statutory merger or consolidation."

2. Southwest Natural Gas Co. v. Commissioner of Internal Revenue, 14 T.C. 81.

3. In argument here the Commissioner relates the transaction to Section 112(b) (4), 26 U.S.C.A. § 112(b) (4).

Tax Court must hold the transaction a reorganization in the absence of a finding that it was not in truth and in substance a merger; or, even if this be not correct, that the facts of this case disclose sufficient "continuity of interest." It is insisted in either view the Tax Court was required to hold under the facts found by it that the transaction in question was in truth a "statutory merger" and hence a "reorganition."

Consideration of the underlying purposes of the terms and provisions of Section 112 of the Internal Revenue Code[4] in its entirety and of this Section (g) (1) (A) as involved here, in particular, as being enacted "to free from the imposition of an income tax purely 'paper profits or losses' wherein there is no realization of gain or loss in the business sense but merely the recasting of the same interests in a different form, the tax being postponed to a future date when a more tangible gain or loss is realized." Commissioner of Internal Revenue v. Gilmore's Estate, 3 Cir., 130 F.2d 791, 794,[5] and thus applicable to transactions which effect only the "readjustment of continuing interest in property under modified corporate forms,"[6] clearly discloses, we think, that the accomplishment of a statutory merger does not *ipso facto* constitute a "reorganization" within the terms of the statute here involved. This has been expressly held by the Court of Appeals for the Third Circuit in a well considered opinion, supported by numerous authorities cited. Roebling v. Commissioner, 143 F.2d 810. There is no occasion for elaboration or reiteration of the reasoning and authorities set forth in that opinion. In Bazley v. Commissioner, 331 U.S. 737, 67 S.Ct. 1489, 1491, 91 L.Ed. 1782, the Supreme Court enforced a similar construction with reference to the "re-capitalization" provision of the section. The authorities are clearly to the effect that the

terms expressed in the statute are not to be given merely a literal interpretation but are to be considered and applied in accordance with the purpose of Section 112. Thus the benefits of the reorganization provision have been withheld "in situations which might have satisfied provisions of the section treated as inert language, because they were not reorganizations of the kind with which § 112, in its purpose and particulars concerns itself. See Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266 79, L.Ed. 596; LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355." Bazley v. Commissioner, supra.

It is thus clear that the test of "continuity of interest" announced and applied by these cited authorities, supra, must be met before a statutory merger may properly be held a reorganization within the terms of Section 112(g)(1)(A), supra. Each case must in its final analysis be controlled by its own peculiar facts.[7] While no precise formula has been expressed for determining whether there has been retention of the requisite interest, it seems clear that the requirement of continuity of interest consistent with the statutory intent is not fulfilled in the absence of a showing: (1) that the transferor corporation or its shareholders retained a substantial proprietary stake in the enterprise represented by a material interest in the affairs of the transferee corporation, and, (2) that such retained interest represents a substantial part of the value of the property transferred.[8]

Among other facts, the Tax Court found that under the merger all of Peoples' assets were acquired by the petitioner in exchange for specified amounts of stock, bonds, cash and the assumption of debts. There was a total of 18,875 shares common stock of Peoples' entitled to participate

---

4. 26 U.S.C.A. § 112.

5. Electrical Securities Corp. v. Commissioner, 2 Cir., 92 F.2d 593, 595, "purpose of the section (112) is apparent; it was meant to allow businesses to be reconstructed when the resulting interests were substantially unchanged."

6. Internal Revenue Regulation 111, Section 29.112(g)–1.

7. Muskegon Motor Specialities Co. v. Commissioner, 6 Cir., 134 F.2d 904, 907.

8. Merten's Law of Federal Income Taxation, Vol. 3, 1950, Cumulative Pocket Supplement Section 20.74.

under the agreement of merger. The stockholders were offered Option A and Option B. The holders of 7,690 of such shares exercised Option B of that agreement and received $30.00 in cash for each share, or a total of $230,700.00. In respect to the stock now involved, the stockholders who exercised Option A, the holders of 59.2 per cent of the common stock received in exchange 16.4 per cent of petitioner's outstanding common stock plus $340,350.00 principal amount of six per cent mortgage bonds (of the market value of 90 per cent of principal), which had been assumed by petitioner in a prior merger, and $17,779.59 cash. The 16.4 per cent of the common stock referred to was represented by 111,850 shares having a market value of $5,592.50, or five cents per share, and represented the continuing proprietary interest of the participating stockholders in the enterprise. This was less than one per cent of the consideration paid by the taxpayers.

We think it clear that these and other facts found by the Tax Court find substantial support in the evidence, and the conclusion of the Tax Court that they failed to evidence sufficient continuity of interest to bring the transaction within the requirements of the applicable statute is correct.

The decision of the Tax Court is
Affirmed.

JOSEPH C. HUTCHESON, Jr., Chief Judge (dissenting).

In complete agreement, as I am, with the conclusion of the majority that each case must in the final analysis be controlled by its own peculiar facts, I am in as complete disagreement with the interpretation placed by the majority upon the result it attributes to the undisputed facts of the case.

In complete agreement, as I am, with the majority view that Roebling v. Commissioner, 3 Cir., 143 F.2d 810 was well decided, I am in as complete disagreement with their view that the facts of this case are in substance the same as the facts of that one, the result required by these facts in substance the same as the results required there.

With deference I venture to say that in the tax court's decision, affirmed by this court, there is too much of sticking in the bark, too little of penetration of the controlling principle; too much of tithing, mint, anise and cummin in assessing the meaning and value of the facts, too little of a rounded view thereof; too much of the letter, too little of the spirit; too much, in short, of ignoring the actual facts of life as to the corporate structures under investigation, too much the creation of a theoretical straw man to knock him down.

I turn from the tax court decision, therefore, and from some of the cases cited by the Commissioner, which though correctly decided on their facts, fail to give clear expression to the controlling principle, to put forward and place my reliance on Bazley v. Commissioner, 331 U.S. 737, 67 S.Ct. 1489, 1490, 91 L.Ed. 1782. There the Supreme Court sets down, so that all who run may read and understand it, the principle applicable and controlling here.

Dealing with a claimed "recapitalization", under Sec. 112(g), the court, after declaring that, though "recapitalization" in connection with the income tax has been part of the revenue laws since 1921, congress has never defined it, went on to say:

"One thing is certain. Congress did not incorporate some technical concept, whether that of accountants or of other specialists, into § 112(g), assuming that there is agreement among specialists as to the meaning of recapitalization. And so, recapitalization as used in § 112(g) must draw its meaning from its function in that section. It is one of the forms of reorganization which obtains the privileges afforded by § 112(g). Therefore 'recapitalization' must be construed with reference to the presuppositions and purpose of § 112(g). It was not the purpose of the reorganization provision to exempt from payment of a tax what as a practical matter is realized gain. Normally, a distribution by a corporation, whatever form it takes, is a definite and rather unambiguous event. It furnishes the proper occasion for the determination and taxation of gain. But there are circumstances where a formal distribution, directly or

through exchange of securities, represents merely a new form of the previous participation in an enterprise involving no change of substance in the rights and relations of the interested parties one to another or to the corporate assets. As to these, Congress has said that they are not to be deemed significant occasions for determining taxable gain.

"These considerations underlie § 112(g) and they should dominate the scope to be given to the various sections, all of which converge toward a common purpose. Application of the language of such a revenue provision is not an exercise in framing abstract definitions. In a series of cases this Court has withheld the benefits of the reorganization provision in situations which might have satisfied provisions of the section treated as inert language, because they were not reorganizations of the kind with which § 112, in its purpose and particulars, concerns itself. See Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355."

In the light of this contribution to the meaning and application of Sec. 112(g), I am wholly unable to understand how, under the undisputed facts found by the board, it could be said that what took place here was a "sale" and not a reorganization. The opinion of the tax court and that of the majority pinpoints the difficulty with petitioner's claim as arising, not out of the smallness of the number of the shares of the common stock of petitioner received by the stockholders of the transferor, but out of the smallness of their market value. This holding of the tax court does complete violence to the whole fact and theory of the difference, in respect of corporate ownership and control, between the ownership, on the one hand, of common stocks having voting power, power of management and ownership of the equity interest in the corporation, and, on the other, the ownership of bonds or notes having no voting power, no power of management, and no ownership in the equity.

The decision and order completely ignore these controlling facts: that Peoples, the transferor, had come out of a 77B reorganization, 11 U.S.C.A. § 207, with no bonded indebtedness and a capital represented only by common stock, while the petitioner had a heavy bonded indebtedness which depressed the present value of its stock to five cents a share.

With deference, again, this is to completely ignore the fundamental facts of corporate investment, corporate life and growth in this country. These are: (1) that the equity, the common, stock ownership in a growth corporation, which grows and prospers with the corporation's growth and prosperity, is the important interest to hold; (2) that in any well managed growth organization, therefore, the ownership and control of its common stock, rather than that of its bonds, its notes, or its preferred stock, is what counts for the most; and (3) that in such a corporation what is most important at a particular time is not what the common stock may be then selling for but the control, and the future, of the equity interest.

In addition, the opinion of the tax court, which this court has affirmed, completely ignores the vital and controlling facts: (1) that there was a statutory merger; (2) that the stockholders of Peoples were to a substantial extent the same persons as the stockholders of petitioner; (3) that, at the date of the merger, individuals who owned approximately 35 per cent of the stock in Peoples owned 85 percent of that of petitioner; (4) that, after the merger, individuals who had owned stock of Peoples owned approximately 88 percent of the stock of the merged corporation; and (5) that, after the merger, the same group of individuals who had previously been in control of the constituent corporations controlled the merged entity with the same officers, the same organization, the same management. The facts are as petitioner puts them in its brief at page 29: "Petitioner at the time of the merger had outstanding certain first mortgage bonds, certain other long term debt, a small issue of preferred stock, and an issue of common stock. In the merger with Peoples, the

stockholders of Peoples received slices of the top layer of the capitalization and the bottom layer of the capitalization (i. e., a proportion of the first mortgage bonds and a proportion of the common stock). They did not receive any part of the preferred stock nor did they receive any part of the 'other long term debt'. They did receive the market value of the Peoples' stock as represented by the new securities. These new securities, together with the stock in petitioner which they already held, gave them a continuing proprietary interest and a substantial stake in the continuing corporation. The same persons controlled the continuing corporation as controlled the two corporations which were merged."

In the light of these and the other undisputed facts, I do not see how it was possible for the tax court to hold, under the principles set down so clearly in Bazley's case, that what occurred here was not a "reorganization" of the kind with which Sec. 112(g), in its purpose and particulars, concerns itself, but was a "sale". I would reverse its decision and order. I respectfully dissent from the judgment affirming it.