THE ERIE COUNTY UNITED BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35646. Promulgated January 29, 1954.

*Roger K. Powell, Esq.*, for the petitioner.
*Robert E. Johnson, Esq.*, for the respondent.

638

## OPINION.

WITHEY, *Judge:* The primary issue in this proceeding is whether the recovery of bad debts charged off in previous years by the consolidating banks but not deducted on their income tax returns, constituted taxable income in the years of their recovery by the petitioner, the consolidated bank.

The petitioner takes the position that the recoveries on the debts here involved did not constitute taxable income to it. In support of its position the petitioner contends that the charge-offs of the debts

made by Vermilion Bank and Farmers Bank were involuntary charge-offs within the meaning of Regulations 111, section 29.23 (k)–1(c)[1] and since those banks never deducted the debts in their income tax returns, they never lost their cost basis for the debts; that petitioner having acquired the debts by virtue of a statutory consolidation within the purview of section 112 (g) (1) (A)[2] of the Internal Revenue Code they had the same basis in its hands as they had in the hands of the transferor banks[3] and that it did not by such recovery realize income but merely recovered such basis.

Respondent contends that since the debts or claims were not carried on the books of the transferor banks at the time of the transfer, no consideration passed therefor; that petitioner acquired such debts with a zero basis; and that therefore the recoveries on the debts resulted in income to petitioner. Respondent further contends that the debts in issue were charged off by the predecessor banks which were entities separate and distinct from the petitioner and, therefore, the petitioner, a new corporation, does not stand in the place of the predecessor banks and is not entitled to a "recovery exclusion" under section 22 (b) (12) of the Code.

---

[1] REGS. 111, SEC. 29.23 (k)–1. BAD DEBTS.—

*    *    *    *    *

(c) Where banks or other corporations which are subject to supervision by Federal authorities (or by State authorities maintaining substantially equivalent standards), in obedience to the specific orders of such supervisory officers charge off debts in whole or in part, such debts shall, to the extent charged off during the taxable year, be conclusively presumed, for income tax purposes, to have become worthless or worthless in part during the taxable year, as the case may be. But no such debt shall be so conclusively presumed to be worthless or worthless only in part, as the case may be, if the amount so charged off is not claimed as a deduction by the taxpayer at the time of filing the return for the taxable year in which such charge-off takes place. If a taxpayer does not claim a deduction in its return for such a totally or partially worthless debt for the year in which such charge-off takes place, but claims such deduction for a later year, then such charge-off in the prior year will be deemed to have been involuntary and the deduction shall be allowed for the year for which claimed, if the taxpayer produces sufficient evidence to show (1) that the debt became wholly worthless in such later year or became recoverable only in part subsequent to the year of such involuntary charge-off, as the case may be, and (2) that, to the extent that the deduction claimed in the later year for a debt partially worthless was not involuntarily charged off in prior years, it was charged off in the later year.

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(g) DEFINITION OF REORGANIZATION.—As used in this section (other than subsection (b) (10) and subsection (1)) and in section 113 (other than subsection (a) (22))—

(1) The term "reorganization" means (A) a statutory merger or consolidation * * *

[3] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

*    *    *    *    *

(7) TRANSFERS TO CORPORATION.—If the property was acquired—

*    *    *    *    *

(B) in a taxable year beginning after December 31, 1935, by a corporation in connection with a reorganization, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer.

Normally recovery of a debt is not income, *J. P. Bass Publishing Co.*, 12 B. T. A. 728, except when the debt has been previously charged off as worthless or where the basis of the debt is zero to the taxpayer. The debts had not been deducted for tax purposes by the consolidating banks but had been charged off on their books on instructions from the banking authorities of the State of Ohio. The standards of the Federal and State banking authorities for determining worthless loans are not always the same as the requirements prescribed by the Internal Revenue Code for deducting bad debts for income tax purposes. For banking purposes, bank examiners may take a conservative view and desire to have slightly doubtful accounts and notes charged off. At the same time the bank itself may have a sound basis for expecting recovery of them. In order to give consideration to both views, the respondent in Regulations 111, section 29.23 (k)–1 (c), has given the taxpayer the right, upon the basis of proper evidence, to determine the year that the loan became worthless and to deduct it in that year even though at the request of the bank examiners it was charged off its books in an earlier year. In such a case the charge-off is under said regulation deemed to be involuntary. We are here confronted with such a situation. The consolidating banks were instructed to charge off the loans. In obedience to such instructions, they charged them off their books but, except for $256.35 deducted in 1938, they did not deduct them in their income tax returns. They then carried the items as nonledger accounts which were part of the consideration involved in the transfer.

The first question is the basis to petitioner of the recoveries on these debts. Section 113 (a) (7) (B) of the Code provides that property acquired in a reorganization shall have the same basis in the hands of the transferor increased by any gain or decreased by any loss to the transferor on the transfer. A reorganization is defined by section 112 (g) (1) (A) to mean a statutory merger or consolidation. The parties have stipulated this consolidation to be a statutory consolidation but such literal designation alone is insufficient to comply with the statute. The transaction must meet the "continuity of interest" test enunciated in *Southwest Natural Gas Co.*, 14 T. C. 81, 87; and *Roebling* v. *Commissioner*, 143 F. 2d 810. This requirement is met by a showing that the transferor corporation or its shareholders retained a proprietary share in the new corporation evidenced by a material interest in the affairs of the transferee corporation, and that such retained interest represents "a substantial part of the value of the thing transferred." *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378; *Southwest Natural Gas Co.*, *supra*. In the case at bar, the stockholders of the Vermilion Bank received 1 share of common stock of the new corporation for each of their old shares and the stockholders of Farmers Bank received 8 shares of common stock of the new

corporation for each of their old shares. The new preferred stock entitled to voting rights and issued to the Reconstruction Finance Corporation constituted 60 per cent of the outstanding voting stock. Therefore, the common stock had the remaining 40 per cent of the voting rights. We conclude that the proportion of the total consideration paid for the stock of the transferors represented by the value of the stock of the transferee corporation represents a definite and substantial interest in the petitioner and that the consolidation is within the ambit of section 112 (g) (1) (A). See also *Helvering* v. *Minnesota Tea Co., supra; John A. Nelson Co.* v. *Helvering*, 296 U. S. 374.

Since section 112 (g) (1) (A) is merely a definition and does not provide that no gain or loss shall be recognized on all reorganizations, we must look to section 112 (a) which states: "Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section." Subsection (b) (3) of section 112 of the Code, which states "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization," is applicable to the reorganization in this proceeding, whereby the stockholders of the consolidating banks exchanged their common stock for common stock of the petitioner. It does not appear to us that the basis in the hands of the transferor need be adjusted by any gain or loss, as provided in section 113 (a) (7), as the book values of assets and liabilities were the same on the books of each of the parties to the reorganization as were thereafter carried on the books of the consolidated bank. The amounts recovered were never deducted for tax purposes, except for $256.35 deducted in 1938. They were carried as nonledger assets by petitioner as they had been by the consolidating banks and the agreement of consolidation provided that all assets, book and nonbook, were conveyed to the consolidated bank. The problems of tax benefit and recovery exclusions arising under the provisions of section 22 (b) (12) are not involved in this situation since the consolidating banks never deducted the debts in question for tax purposes and therefore could not have received any tax benefit, except as to the $256.35 deducted in 1938. Therefore, the cases cited by respondent, namely, *National Bank of Commerce of Seattle*, 40 B. T. A. 72 and 12 T. C. 717, are not in point.

Having found section 113 (a) (7) to be applicable in this case, the petitioner has the same basis as the consolidating banks prior to the consolidation. A recovery of the debts charged off prior to the consolidation would not have resulted in income to the consolidating banks and recovery by the petitioner in this case is not income to it as its basis was the same as the transferors.

Since $256.35 received by petitioner in 1944 represented recoveries on debts charged off by Farmers Bank in 1938 and a deduction therefor having been taken and allowed in its income tax return for that year, these debts, thereafter, were without any basis in the hands of Farmers Bank. Consequently, when the petitioner acquired them they had no basis in its hands. Therefore, all recoveries thereon constituted income for the year of receipt.

In determining the deficiency for 1944, the respondent increased the income reported by petitioner for that year by $26,449.87 as representing income resulting from recoveries by petitioner of bad debts charged off by the predecessor banks. In this connection the parties have stipulated that in the event the period of limitations provided in section 275 (c) of the Code[4] for assessment of tax for 1944 has not expired, the correct amount to be included in petitioner's income on account of recoveries in that year is $23,352.44. Since under our holdings above only $256.35 of the recoveries in 1944 constituted income, and since the only adjustment made by respondent to the reported income of the petitioner for that year was with respect to the recoveries, it is apparent that the income of $58,658.74 reported by petitioner was not understated by an amount in excess of 25 per cent. As a consequence the 5-year period of limitations is inapplicable. In view of this, and since the petitioner's return for 1944 was filed on March 15, 1945, and since it does not appear that the petitioner executed any consent extending the 3-year period of limitations provided in section 275 (a) to or beyond the date of the mailing of the deficiency notice, we hold that the period of limitations has expired for the assessment of a deficiency for 1944.

The parties have stipulated that an amount of $855.39 allowed as a recovery exclusion by respondent in determining the deficiency for 1946 was improperly allowed and is to be included in petitioner's taxable income for that year. Since the respondent has moved to increase the deficiency for 1946 because of such improper allowance, effect will be given to the stipulation of the parties in a recomputation of the deficiency for that year.

*Decision will be entered under Rule 50.*

---

[4] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
Except as provided in section 276—
(a) GENERAL RULE.—The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

\* \* \* \* \* \* \*

(c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.