OPINION. Rige, Judge: The tax consequences of this transaction, or series of transactions, depend upon whether they are characterized as a sale or as a “reorganization.” Petitioners contend that we must regard the sequence of events as initially comprising two completely independent transactions. The first would be the sale of their stock in Jack & Heintz, Inc., for cash plus securities of the purchasing corporation, a transaction fully taxable at capital gains rates.. The second transaction, in petitioners’ view, was the statutory merger of Precision’s 1-day-old operating subsidiary, Jack & Heintz, Inc., into itself. Petitioners argue that although this merger may satisfy the formal requirements of section 112 (g) (1) (A) [3] for a reorganization, it is to be considered as separate and distinct from the exchange of the previous day and does not affect the capital gains treatment of that exchange. Respondent’s position is that the agreement to sell executed on March 4, the sale on March 5, and the merger on March 6 were all parts of a single unitary transaction, a plan of reorganization under section 112 (b) (3) ,[4] and that the cash received by petitioners constitutes “boot” taxable as ordinary income under section 112 (c).[5] After careful consideration of the record herein, we are convinced that petitioners’ exchange of their stock in Jack & Heintz, Inc., on March 5,. 1946, for cash plus preferred stock of Precision constituted a sale of such stock and was not an exchange executed “pursuant to a plan of reorganization.” The cash received by petitioners constituted consideration for their stock and, therefore, could not have the effect of the distribution of a taxable dividend. The basic facts herein are that petitioners, after unsuccessfully attempting to sell their stock in Jack & Heintz, Inc., in an all cash deal, finally settled for approximately $5,000,000 in cash plus 60,000 shares of preferred stock in the corporation which was organized by the purchasing group to make the purchase. Essential to this arrangement was the promise made to petitioners by members of the purchasing group that the preferred stock being paid to petitioners as part of the consideration would shortly thereafter be sold on their behalf together with a public offering of the purchasing corporation’s own preferred stock. Pursuant to the plan conceived by the purchasing group, petitioners caused their corporation to amend its profit-sharing plan and had its board of directors give its approval to the purchasing group’s plan to merge Jack & Heintz, Inc., into Precision. On the day following the exchange of petitioners’ stock in Jack & Heintz, Inc., for cash plus stock in Precision, the former company was merged into the latter. Then, according to the original plan, still another corporation was merged into Precision. This was followed by a public offering of Precision’s common stock through which Precision obtained $8,525,000 of additional capital. However, due to the underwriter’s insistence that the market for preferred stock was too weak at that time, the promoters of Precision were unable to fulfill their oral promise to petitioners that petitioners’ preferred shares in Precision would he included at public offering. Private sales were, therefore, arranged by the promoters of Precision and, on August 30, 1946, petitioners sold all their preferred shares in Precision, except the 10,000 then held in escrow. We think it clear that petitioners did not dispose of their stock in Jack & Heintz, Inc., pursuant to a “plan of reorganization.” The term “reorganization,” as used in section 112, contemplates a readjustment of the corporate structure of an enterprise, and requires that those individuals who are the owners of the enterprise prior to such readjustment continue to maintain a substantial proprietary interest therein. Roebling v. Commissioner, 143 F. 2d 810 (C. A. 3, 1944), affirming a Memorandum Opinion of this Court, entered June 30,1943, certiorari denied 323 U. S. 773 (1944); Southwest Natural Gas Co., 14 T. C. 81 (1950), affd. 189 F. 2d 332 (C. A. 5,1951), certiorari denied 342 U. S. 860 (1951). Kegs. 111, sec. 29.112 (g)-1.[6] The terms of the instant plan did not contemplate the petitioners’ maintenance of a proprietary interest in the continuing corporation. The record convinces us that petitioners wished to dispose of their entire interest in Jack & Heintz, Inc. When they were unable to obtain “an all cash deal,” they settled for cash plus preferred stock in the purchasing corporation, but only after obtaining the promise of the promoters of such purchasing corporation that their preferred stock in that corporation would be sold together with a public offering of that corporation’s stock within 30 days. Due to various unforeseen difficulties, the public offering was delayed and, when finally made, the underwriters prevented the sale of petitioners’ stock at that time. However, within a month, private sales were arranged by the purchasing group on petitioners’ behalf and petitioners disposed of all but the 10,000 shares then held in escrow. This was no mere readjustment of corporate structure. The old proprietors were stepping out; they were being paid in cash plus the preferred stock of the purchasing corporation; and most important, the preferred stock which they received was to be held only temporarily until its sale was arranged for by the purchasing group. It is true that petitioners were, according to the terms of sale, required to help effectuate the merger. Thus, they caused Jack & Heintz, Inc., to amend its profit-sharing plan and to approve the merger before the March 5 exchange; they were also required to subsequently vote for the merger of Eisemann into Precision. But these are only conditions of sale imposed by the purchasers upon the sellers and do not change the essential nature of the transaction which was one of “sale” rather than “reorganization.” It does not help us to characterize the March 5 transaction as an “exchange” rather than as a sale for, in a technical sense, every sale may be referred to as an exchange. The essential element which must be shown if this transaction is to be termed a statutory reorganization is that the exchange took place “pursuant to a plan of reorganization” as that phrase is used in section 112 (b) (3), and, as we have stated above, this element is lacking herein. The parties themselves, in their various printed agreements, characterized the March 5 transaction as a sale; and we think this is of some help in establishing their intent to divest themselves of their proprietary interest in Jack & Heintz, Inc., and the continuing corporation. The principal objective of the parties was the purchase and sale of Jack & Heintz, Inc. What the purchasing group did with that corporation subsequently was not important to petitioners. Petitioners were not particularly concerned whether the purchasing group held Jack & Heintz, Inc., as an operating subsidiary or merged it into itself. Having disposed of their stock in Jack & Heintz, Inc., by sale, petitioners are entitled to capital gains treatment on the profits thus realized. Decisions will be entered under Rule 50. SEC. 112. RECOGNITION OF GAIN OR LOSS. (g) Definition of Reorganization. — As used In this section (other than subsection (b) (10) and subsection (1)) and in section 113 (other than subsection (a) (22))— (1) The term “reorganization” means (A) a statutory merger or consolidation. * * * SEC. 112. RECOGNITION OF GAIN OR LOSS. (b) Exchanges Solely in Kind.— **»*»♦* (3) Stock foe stock on reorganization. — No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. SEC. 112. RECOGNITION OF GAIN OR LOSS. (c) Gain From Exchanges Not Solely in Kind.— (1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5), or within the provisions of subsection (1), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph or by subsection (1) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money andi the fair market value of such other property. (2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1)- of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property. Regulations 111. Seo. 29.112 (g)-l. Purpose and Scope op Exception of Reorganization Exchanges.— Purpose: » * * The purpose of the reorganization provisions of the Internal Revenue Code is to except from the general rule certain specifically described exchanges incident to such readjustments of corporate structures, made in one of the particular ways specified in the Code, as are required by business exigencies, and which effect only a readjustment of continuing interests in property under modified corporate forms. Requisite to a reorganization under the Code are a continuity of the business enterprise under the modified corporate form, and a continuity of interest therein on the part of those persons who were the owners of the enterprise prior to the reorganization. * * *