OPINION. Bice, Judge: The parties here agree that Pocahontas was merged into the Leather Company in September 1947, but they disagree on whether that merger was a “statutory merger or consolidation” within the meaning of section 112 (g) (1) (A).[3] The respondent contends that it was. He argues that petitioners exchanged their Pocahontas stock for bonds and notes of the Leather Company pursuant to the agreed-upon plan for such a reorganization within the meaning of section 112 (b) (3),[4] and that the notes which petitioners received, to the extent of $161.05 per share of their Pocahontas stock, represented a distribution of earnings and profits accumulated after February 28, 1913, and was therefore taxable as a dividend pursuant to section 112 (c) (1) and (2).[5] While the petitioners concede that there was a merger, they deny that it was a “statutory merger or consolidation” within the meaning of the statute. They contend, under the doctrine of LeTulle v. Scofield, 308 U. S. 415 (1940), and Roebling v. Commissioner, 143 F. 2d 810 (C. A. 3, 1944), affirming a Memorandum Opinion of this Court dated June 30, 1943, certiorari denied 323 U. S. 773 (1944), that in addition to the formal framework of a merger there must also be a continuity of proprietary interests to satisfy the requirements of the statute. They argue that when they exchanged their Pocahontas stock for bonds and notes, their proprietary interests ceased and they were only creditors of the Leather Company, and, hence, that there was no statutory reorganization but a sale on which only a long-term capital gain was realized. We agree with the petitioners that the exchange of their stock for bonds and notes was a sale and not a statutory reorganization. In LeTulle v. Scofield, supra, one corporation exchanged all of its properties for cash and the bonds of another corporation and then distributed such cash and bonds to its stockholders. Neither the selling corporation nor its stockholders reported gain on the transaction on the theory that there had been a tax-free statutory reorganization. The Supreme Court held that there was no statutory reorganization because the stockholders of the selling corporation did not continue their proprietary interests in the purchasing corporation. In reaching the same conclusion on similar facts, the Court of Appeals said, in Roebling v. Commissioner, supra at p. 812: though there was * * * a “true statutory merger” under [State law] * * *, (1) such “true statutory merger” is insufficient without more to qualify as a “reorganization” under tile Revenue Act, and (2) that a “continuity of interest” * * * must still be present to establish a true reorganization. The respondent attempts to show the necessary continuity of interest here by arguing that the bonds which petitioners received were the equivalent of stock, and, hence, he*contends that the real effect of the transaction was an exchange of stock for stock despite the name which was given to the security instruments which the petitioners received. We do not agree with the respondent that the bonds here in question were the equivalent of stock. We think it clear that the bonds which petitioners received were, in fact, evidences of indebtedness and did not represent shares of equity capital. The bonds had a fixed maturity date; they bore a fixed rate of interest; and they gave the holders a preferred position' over stockholders and other creditors. Cf. John Kelley Co. v. Commissioner, 326 U. S. 521 (1946). The only provision in the bonds which might indicate a proprietary interest in the corporation was that the bondholders were entitled to elect one-half of the corporation’s board of directors. But on this record, that one provision, standing alone, does not change the character of these bonds from evidences of a debtor-creditor relationship to evidences of an equity capital investment. Helvering v. Richmond, F. & P. R. Co., 90 F. 2d 971 (C. A. 4, 1937), affirming 33 B. T. A. 895 (1936). See Ohio Furnace Co., 25 T. C. 179 (1955). The respondent also, in,arguing that the bonds represented an equity capital investment, points to the so-called “thin capitalization” of the Leather Company in that it had outstanding some 22 million dollars of bonds and only $1,000 of capital stock. In the circumstances of this particular case, we attach no significance to that fact. In the ordinary thin capitalization case, the alleged bondholders or noteholders and stockholders are the same persons. Colony, Inc., 26 T. C. 30 (1956), affd. 244 F. 2d 75 (C. A. 6, 1957), certiorari granted 355 U. S. 811 (1957); Erard A. Matthiessen, 16 T. C. 781 (1951), affd. 194 F. 2d 659 (C. A. 2, 1952); Isidor Dobkin, 15 T. C. 31 (1950), affd. 192 F. 2d 392 (C. A. 2, 1951). That is not true here. We think it is not unusual to find only a minimum amount of capital stock outstanding when the new corporation into which others have been merged is a nonprofit organization. Ohio Furnace Co., supra. The petitioners became creditors of the corporation and not stockholders by exchanging their Pocahontas stock for the Leather Company’s bonds and notes. Creditors are not owners, and when petitioners changed their status from stockholders to creditors, their continuity of ownership interest was broken and they ceased to have any proprietary interest in the new company. There was therefore no statutory reorganization but only a sale on which, petitioners realized a long-term capital gain. LeTulle v. Scofield, supra; Roebling v. Commissioner, supra. The respondent relies heavily on Emanuel N. (Manny) Kolkey, 27 T. C. 37 (1956), on appeal (C. A. 7 and C. A. 2, June 12, 1957), in support of his position. That case is so entirely different from the one before us that no purpose would be served by comparing its facts with those here. Suffice it to say that we concluded there that the exchange of stock for notes did not create a bona fide debtor-creditor relationship resulting from a true purchase and sale. We held that the notes, in truth, represented an equity investment by the old stockholders in the continuing business. Our findings there showed beyond any doubt that the purported sale was only a sham under which the old stockholders “could masquerade as ‘creditors’, and withdraw earned surplus and profits in the guise of capital gains.” That is not true here. We note that on the date of the merger, Pocahontas had a substantial amount of undistributed earnings which had accumulated since February 28, 1913. That fact, however, does not convert what was truly a sale into a reorganization. Ralph M. Reintz, 25 T. C. 132 (1955). Since there was no statutory reorganization, the petitioners could not have received a dividend when they sold their Pocahontas stock, and it is unnecessary to decide whether the respondent’s determination of the amount of the alleged dividend was correct. In determining the deficiencies in Docket No. 54570, the respondent disallowed $127 claimed as a medical expense for 1947. The waiver signed by petitioners in that docket gave the respondent the right to assess and collect deficiencies only if they had omitted from gross income an amount properly includible therein which was in excess of 25 per cent of the amount of gross income stated in their returns. Since an understatement in excess of 25 per cent could result only if the petitioners had received dividends when they sold their stock, it follows that since they did not receive any dividends, there were no understatements in excess of 25 per cent of reported income. Assessment and collection of any deficiency determined for the year 1947 in that docket is therefore barred by the statute of limitation. Decisions will be entered for the fetitioners in Docket Nos. 54-568,54570,54687,54688,54722, 55426,and 55427. Decisions will be entered under Bule 50 in Docket Nos. 54569,54572, and 54723. SEC. 112. RECOGNITION OB' GAIN OR LOSS. (g) Definition of Reorganization. — * ♦ * (1) The term “reorganization” means (A) a statutory merger or consolidation • » * SEC. 112. RECOGNITION OF GAIN OR LOSS. (b) Exchanges Solely in Kind.— * ****** (3) Stock for stock on reorganization. — No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. SEC. 112. RECOGNITION OF GAIN OR LOSS. (c) Gain from Exchanges Not Solely in Kind.— (1) If an exchange would be within the provisions of subsection (b) (1), (2), 03), or (5), or within the provisions of subsection (1), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph or by subsection (1) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property. (2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from, the exchange of property.